Davis David SHAGLOAK, Appellant,

v.

STATE of Alaska, Appellee.

No. 3300.

Supreme Court of Alaska.

Aug. 11, 1978.

---

Chris J. Rigos, Asst. Public Defender, Brian C. Shortell, Public Defender, Anchorage, for appellant.

Monica Jenicek, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

This is an appeal from the Superior Court's amendment of defendant's sentence after the entry of a written judgment and commitment and from the sentence imposed.

Davis David Shagloak was arrested on July 5, 1976 and charged with burglary in

an occupied dwelling in violation of AS 11.20.080. He was subsequently indicted on that charge and pleaded guilty. Judge Lewis orally sentenced Shagloak, on December 30, 1976. The sentence, as it appears in the transcript, was pronounced as follows.

> Davis David Shagloak, . . . it is the judgment and sentence of this court that you be committed to the custody of the commissioner of health and social services for a period of 15 years. And it is the expressed *recommendation* of this court that you not be considered for *probation* until one-half of that sentence has been— at least one-half of that sentence has been served. (our emphasis)

Later that day, Judge Lewis signed a Judgment and Commitment conforming to the court's oral pronouncement of sentence. That document stated, in part:

> IT IS ADJUDGED that the defendant is hereby committed to the custody of the Commissioner of the Department of Health and Social Services of the State of Alaska or his authorized representative for a period of FIFTEEN YEARS.
>
> IT IS THE COURT'S RECOMMENDATION THAT PROBATION NOT BE CONSIDERED UNTIL AT LEAST ONE–HALF OF THE SENTENCE IS SERVED. (trial court's emphasis)

One month later, on February 1, 1977, an Assistant District Attorney moved to correct the judgment sheet to change the court's *recommendation* that *probation* not be granted until at least one-half the sentence is served to an *order* that *parole* not

be granted until one-half the sentence is served. A date was set to hear oral arguments on the motion. In his opening remarks at that hearing, the judge stated that a "clear mistake" had been made with regard to the word "probation." After subsequently hearing arguments by both the defense and the State, the court amended the judgment to read as follows.[1]

> It is the court's order that parole not be considered until at least one-half of the sentence is served.

There are two issues on appeal:

1. In amending the judgment and commitment, did the superior court violate defendant's protection against double jeopardy under the Alaska and United States Constitutions?

2. Was the superior court clearly mistaken in its imposition of a fifteen year sentence for the crime of burglary within a dwelling?

### Amendment of the Sentence

Shagloak appeals from the court's imposition of the amended sentence and asks that his original sentence be reinstated.

The effect of the court's amendment of defendant's sentence was to increase his minimum incarceration before parole could be considered. Under the original judgment and commitment (where the court *recommended* that the probation not be given until at least one-half of the sentence had been served), Shagloak would have been eligible for parole after five years of incarceration.[2] Under the amended sen-

---

1. The court said:

 I intended to impose a . . . sentence and to limit the eligibility of the defendant to release in accordance with 33.14.230(2) paragraph (a) sub. (1) [sic, 33.15.230(a)(1)] which does require that the court order—the court may order that at least one-third of the sentence be served before eligibility for parole. In using the words recommended and probation the court clearly misspoke.

 . . . . .

 And that by recommendation I again misspoke, intending to use the word ordered. And lastly as to the jurisdictional question, I find that in my erroneous employment of the two words, recommendation and probation, I

 consider these clerical rather than judgmental errors and that Rule 36 applies, the court does retain power to correct clerical mistakes. And accordingly, the judgment sheet will be amended by substituting for the word recommendation the word order, and for the word probation the word parole.

2. In the absence of a court order to the contrary, AS 33.15.080 allows the parole board to parole a prisoner after one-third of his sentence has been served. AS 33.15.080 provides:

 *Granting of parole.* If it appears to the board from a review that a prisoner eligible for parole will, in reasonable probability, live and remain at liberty without violating the

tence (where the court *ordered* that parole not be considered until one-half the sentence was served), Shagloak would not be eligible for parole until after at least seven and one-half years of incarceration.[3]

We held in *Sonnier v. State,* 483 P.2d 1003, 1005 (Alaska 1971) that "once a sentence has been meaningfully imposed, it may not, at a later time, be increased." An upward modification of a sentence meaningfully imposed would subject criminal defendants to the anxiety and insecurity against which the constitutional prohibition of double jeopardy stands as a safeguard.[4] The issue presented in this appeal requires us to explain the limits of a "meaningfully imposed" sentence.

■ A sentence is meaningfully imposed when it is legally imposed[5] and not subject to change under our Criminal Rules. Criminal Rule 35(a) and Criminal Rule 36 provide two means under which a sentence, once imposed, may be amended.

■ Rule 35(a) provides that the "court may correct an illegal sentence at any time." A sentence is illegal within the meaning of this rule if it is rendered in excess of an applicable statute.[6] In imposing fifteen years for the crime of burglary within an occupied dwelling at night, the court was within the sentencing constraints of AS 11.20.080.[7]

■ The court's recommendation that the defendant not receive probation until at least one-half of his sentence was served, although a non sequitur, was likewise within the sentencing court's power. The court has no power to order probation more than 60 days after a sentence is imposed;[8] however, a *recommendation* regarding probation does not contravene that prohibition. It is not probation, but parole, for which an accused may be considered eligible after a portion of his sentence has been served. Thus, the original sentence was legal and therefore not correctable under Rule 35(a).

■ Rule 36[9] is available for the correction of "clerical mistakes" or "errors in the

laws, or without violating the conditions imposed by the board, and if the board determines that his release on parole is not incompatible with the welfare of society, the board may authorize the release of the prisoner on parole. However, no prisoner may be released on parole who has not served at least one-third of the period of confinement to which he has been sentenced, or in the case of a life sentence, has not served at least 15 years.

3. The amended judgment and commitment requires that "parole not be considered until at least one-half of the sentence is served."

4. Article I, Section 9 of the Alaska Constitution states, in pertinent part:
No person shall be put in jeopardy twice for the same offense.
The Fifth Amendment to the United States Constitution states, in pertinent part:
No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb; . . .

5. *Pollard v. United States,* 352 U.S. 354, 360, 77 S.Ct. 481, 485, 1 L.Ed.2d 393, 399 (1957); *Bozza v. United States,* 330 U.S. 160, 164, 67 S.Ct. 645, 648, 91 L.Ed. 818, 821–22 (1947); *Llerena v. United States,* 508 F.2d 78, 80 (5th Cir. 1975); *United States v. Turner,* 518 F.2d 14, 17–18 (7th Cir. 1975); *United States v. Solomon,* 468 F.2d 848, 852 n. 8 (7th Cir. 1972).

6. *See* 2 C. Wright *Federal Practice and Procedure—Criminal* § 582 at 522–53 (1969).

7. AS 11.20.080 provides:
*Burglary in dwelling house.* A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house or is armed with a dangerous weapon in it, or assaults a person lawfully in it is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. However, if the burglary is committed at nighttime, it is punishable by imprisonment for not less than one year nor more than 15 years. If a human being is within the dwelling at the time of the burglary during the nighttime or daytime, it is punishable by imprisonment for not less than one year nor more than 20 years.

8. AS 12.55.080; *see Davenport v. State,* 543 P.2d 1204, 1211 (Alaska 1975).

9. Criminal Rule 36 provides:
Clerical mistakes in judgments, orders or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time and after such notice, if any, as the court orders.

record arising from oversight or omission." We believe that where the effect of an amendment is to increase the severity of a sentence this rule must be interpreted to be applicable only to sentencing errors which obviously conflict with the intention of the court.[10] So construed, the rule is in consonance with the double jeopardy clause of the Alaska and United States Constitutions. It is clear to us that, using this test, the sentencing court meant to refer to parole rather than probation for throughout the sentencing colloquy between court and counsel the court used the terms parole and probation interchangeably.

■ The more critical question arising from the court's amendment of judgment is whether, under this test, the court can properly change its recommendation to an order. We think not. It is not obvious from the sentencing proceedings that the court sought to order that the defendant not be eligible for parole until one-half his sentence was served. Sentencing courts may either recommend or order a limitation on parole eligibility at the time of sentencing, or they may say nothing about the matter. A sentence embodying a recommendation that the Division of Corrections not grant parole until a specific portion of the sentence is served is not binding on the parole board, although it may be considered relevant by the board. An order, however, must be followed by the parole board in its determination of a prisoner's eligibility for parole. AS 33.15.230(a)(1). Either a recommendation or an order as to parole eligibility was logically possible and no obvious mistakes were committed by the court's use of the term "recommendation." That being so, the court's recommendation may not be amended to an order.

■ In reaching this conclusion, we do not question the veracity of the trial judge's statement that he intended to order rather than recommend parole. We believe that if

Rule 36 is not to clash with the prohibition against double jeopardy, only an objectively ascertainable mistake—a mistake which can be determined by contemporaneous record evidence—will justify increasing a sentence.

### Sentence Appeal

■ Shagloak claims that the court's sentence of fifteen years was excessive. When a sentence is appealed, we will remand for resentencing when our independent examination of the record reveals that the court's imposition of the contested sentence is clearly mistaken. *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970). The relevant factors for the consideration of this court in sentence review for excessiveness include "the nature of the crime, the defendant's character, and the need for protecting the public." *State v. Chaney, supra* at 443.

The offense for which Shagloak was convicted was burglary in an occupied dwelling.[11] The crime can be recreated as follows. In the early morning hours of July 5, 1976, Shagloak entered the unlocked apartment of Mr. and Mrs. Frank Buschell. Shagloak went into the couple's bedroom where they were sleeping and took a gold nugget ring, some currency, and the woman's purse. There is no evidence that Shagloak was armed. After a few minutes inside, Shagloak exited the Buschell apartment with the loot and attempted entrance to other apartments in the same building. Shortly thereafter, the defendant was arrested. During the theft from the Buschell apartment, both occupants were asleep. They were awakened by investigating officers at 5:00 A.M. after the defendant had exited the apartment. It appears, however, that Mrs. Buschell has suffered severe emotional trauma from the incident and has submitted herself to her doctor's care in Seattle.

The presentence report indicates that Shagloak is a 29 year old Eskimo who was

---

10. *See United States v. Raftis,* 427 F.2d 1145, 1146 (8th Cir. 1970); *McHugh v. United States,* 230 F.2d 252, 255–56 (1st Cir. 1956), *cert. denied* 351 U.S. 966, 76 S.Ct. 1030, 100 L.Ed. 1486

(1956); 8A *Moore's Federal Practice* § 36.02 at 36–2 (2d ed. 1977).

11. See footnote 7, *supra.*

divorced in December 1976. His only recorded employment reveals that he worked for A-1 Janitorial for three weeks in May 1976 and for the Anchorage Westward for four weeks during the months of June and July 1976. His prior criminal record is of considerable length. His first arrest as an adult was for petty larceny. Over the course of the next seven years he was convicted six times for burglary in a dwelling, a felony offense, once for defrauding an innkeeper and once for escape. He has been arrested twice for probation violations. The record clearly demonstrates Shagloak's propensity for criminal activity. He has not been discouraged by more lenient sentences. During the past nine years, Shagloak has committed ten crimes for which he spent 6½ years in prison.

 The crime of burglary within an occupied dwelling is a serious crime. We agree with the trial judge's observation of its severity when he said:

> People do have firearms in their homes, they do assert their right to protect themselves from intruders, and this assertion might be exercised in a manner that would destroy Mr. Shagloak or the occupant. And the court cannot thrust upon this community the risk of that to take place.

The incremental danger posed by occupancy of the burglarized dwelling is reflected in the legislative determination that burglary in an occupied dwelling carries a sentence of five more years than burglary in an unoccupied dwelling. AS 11.20.080. Although we have not forgotten the datum that most maximum prison terms should not exceed five years,[12] the evidence in this case compels us to find that this crime was a serious offense committed by a dangerous, compulsive offender, thus warranting deviation from our basic rule. In this case,

the fifteen year sentence was not excessive.[13]

 Shagloak also urges that the superior court erred in its determination that he was not amenable to rehabilitation. Upon passing sentence, the trial court must give consideration to the goals of rehabilitation, isolation of the offender, deterrence of the offender and others criminally inclined and community condemnation of the offender. *State v. Chaney, supra* at 444. "To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case."[14] The goal of rehabilitation is a touchstone of penal administration, *State v. Chaney, supra* at 444, and is mandated by Article I, Section 12 of our Constitution. In light of the importance of rehabilitation in the sentencing process, we will affirm sentences which disregard rehabilitation as an alternative only where sufficiently articulated reasons are given for that decision or where these reasons appear clear on the face of the sentencing proceedings.

 In the case before us, the sentencing court rejected the possibility of rehabilitation for Shagloak. This conclusion was drawn after careful consideration of its probable success. The court considered the testimony of Mr. Willie Robinson, project director for Family House, a live-in behavior modification program of two years duration. It was Mr. Robinson's conclusion that Shagloak stood only a 40% chance of successfully completing the program. In passing sentence, the judge had before him a copy of the presentence report which detailed Shagloak's prior record of convictions. As a result of one of his convictions for burglary in a dwelling, Shagloak received a rehabilitative stint at Future

---

12. *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974).

13. Shagloak urges that his fifteen year sentence, when compared to a fifteen year sentence for other dissimilar offenses, suggests a disparity sufficient to render it clearly mistaken. "In general, the comparative gravity of offenses and their classification and resultant

punishments is for legislative determination." *Alex v. State*, 484 P.2d 677, 685 (Alaska 1971). This latitude is controlled only by constitutional safeguards; defendant has not claimed that these have been violated in this case.

14. *Nicholas v. State*, 477 P.2d 447 (Alaska 1970).

House, a drug rehabilitation program of less intensity than Family House. After seventeen days at Future House, Shagloak escaped. Shortly thereafter, he committed and was convicted of his sixth burglary in a dwelling, the present one being his seventh. During the 6½ years Shagloak spent in jail for his prior convictions he received various psychological counseling and participated in group therapy sessions. It was the recommendation of his most recent psychiatric examination [15] that Shagloak may be non-responsive to rehabilitation. That report stated:

> [I]t is necessary to strongly consider this individual's past record of criminal activities and his relative lack of ability to be rehabilitated from previous attempts while incarcerated or institutionalized.

It was also the conclusion of the presentence report that Shagloak "is not a candidate for rehabilitation, and that simple incarceration, for the defendant's safety and the safety of the public is necessary." It is with the assistance of this evidence that the judge passed sentence. There is no suggestion in the record that the court ignored this information. In fact, the court considered the possibility of rehabilitation several times, concluding that the defendant was not amenable to rehabilitation. Despite the court's pessimistic conclusion, it is the assessment of the likelihood of rehabilitation in conjunction with our other enunciated goals of penal administration that satisfies the mandate of *State v. Chaney, supra.* It would be difficult to conclude that the court gave inadequate attention to the goal of rehabilitation.

Shagloak seems to imply that the court, in rendering a fifteen year sentence, has per se ignored his prospects for rehabilitation. It is not necessarily against Shagloak's rehabilitative interests to be given a fifteen year sentence. The thrust of the court's sentence of fifteen years is that Shagloak was not amenable to rehabilitation at the proposed live-in behavior modification programs. It is quite likely that the court concluded that a substantial period of incarceration was in Shagloak's best rehabilitative interests in light of the fact that his 10 previous short term periods of incarceration had failed.

In light of our independent examination of the case we believe that the trial court was not clearly mistaken in its imposition of sentence.

We instruct the lower court to vacate the amended judgment and commitment and re-enter the original judgment with the change provided in this opinion.

REVERSED IN PART; AFFIRMED IN PART; REMANDED.

BURKE, Justice, dissenting in part.

I dissent from that portion of the majority opinion holding that the trial court lacked authority to amend its judgment to order the limitation on appellant's eligibility for parole. In my opinion, such action was authorized by Criminal Rule 36 and did not violate appellant's right against double jeopardy. I see no reason to question the trial court's statement that when it used the word "recommendation" it intended to use the word "order." Such being the case I believe the court was entitled to correct its judgment. A "meaningfully imposed" sentence, it seems to me, is one that accurately states the disposition intended by the sentencing judge. Thus, I find nothing in

---

15. The most recent psychological and psychiatric evaluation reviewed by the probation-parole officer in composing his presentence report for the court was made on August 8, 1975. That evaluation was made by Dr. Paul Roberts, M.D., a psychiatrist, nearly one year before the present offense was committed. Although this court in *Tommy v. State,* 551 P.2d 179, 180 (Alaska 1976) remanded a case for a resentencing due to the absence of a current psychological evaluation, we later stated in *Walton v. State,* 568 P.2d 981, 984 (Alaska 1977):

> Where the sentencing court is fully aware of the defendant's personal and psychological background and takes these factors into account in arriving at a sentence which comports with the proper goals of sentencing, this court need not remand for the purpose of obtaining a current psychological evaluation of the defendant.

Six psychiatric/psychological evaluations were appended to the presentence report submitted to the court.

the action of the trial court that violates our holding in *Sonnier v. State*, 483 P.2d 1003 (Alaska 1971).