The Chief Justice, after minutely recapitulating the evidence, and applying it to the charges in the indictment, expressed the following sentiments :—
 

 McKean, Chief Justice.
 

 This is a case of the first impression in the United States. It must be determined on the principles of the laws of nations, which form a part of the municipal law of Pennsylvania ; and, if the offences charged in the indictment have been committed, there can be. no doubt, that those laws have been violated. The words used in the minister’s house (which is to be considered as a foreign domicil, where the minister resides in full representation of his sovereign, and where the laws of the state do not extend), may be compared to the same words applied to the judges, in a court of justice, where they sit in representation of the majesty of the people of Pennsylvania. In that case, the offender would be immediately committed to jail, without the preliminary process of an indictment by a grand jury ; and, in the case before us, if the offender is convicted, he may certainly be punished by fine and imprisonment.
 

 In actions of slander, words were formerly construed in the mildest sense they would admit; but reason has superseded such forced interpretations, and words are now to be taken according to their ordinary import and meaning. Those expressed by the defendant, are evidently of a tendency so opprobrious and violent, that they cannot fail to aggravate the outrage which has been committed.
 

 As to the assault, this is, perhaps, one of that kind, in which the insult is more to be considered, than the actual damage ; for, though no great bodily pain is suffered by a blow on the palm of the hand, or the skirt of the coat, yet these are clearly within the legal definition of assault and battery, and among gentlemen, too often, induce duelling, and terminate in murder. As, therefore, anything attached to the person, partakes of its inviolability, de Longchamps’ striking Monsieur Marbois’ cane, is a sufficient justification of that gentleman’s subsequent*"conduct.
 

 *Bryan, Justice. — The distinction between a consul and a member of the legation, is not warranted in this case ; for Monsieur Marbois [*115 never ceased to be the latter. As secretary to the legation, his authority descends from a high source, his commission being made out in the same form as the mirister’s, and signed in the same manner, by the king his roaster.
 

 
 *118
 
 The jury, at first, found tbe defendant guilty of the assault only; but, the court desiring them to reconsider the matter, they returned with, a verdict against him on both counts.
 

 The sentence of the court was suspended, in consequence of a case stated by his Excellency the President, and the Honorable Supreme Executive Council, for the opinion of the judges. It was argued in open court, on the 10th and 12th of July, by five counsel, two for the affirmative, and three for the negative ; and on the 7th of October, the prisoner being brought before the.court, the Chief Justice stated the case, repeated the. answers of the judges, and finally, pronounced the judgment of the court, in the following manner.
 

 McKean, Chief Justice. — Charles Julian de Longchamps: You have been indicted for unlawfully and violently threatening and menacing bodily harm and violence to the person of the Honorable Francis Barbe de Marbois, secretary to the legation from Franco, and consul-general of France to the United States of America, in the mansion-house of the minister plenipotentiary of France ; and for an assault and battery committed upon the said secretary and consul, in a public street in the city of Philadelphia. To this indictment, you have pleaded, that you were not guilty, and for a trial put yourself upon the country; an unbiassed jury, upon a fair trial, and clear evidence, have found you guilty.
 

 These offences having been thus legally ascertained and fixed upon you, his Excellency the President, and the Honorable the Supreme Executive Council, attentive to the honor and interest of this state, were pleased to inform the judges of this court, as they had frequently done before, that the minister of France had earnestly repeated a demand, that you, having appeared in his house in the uniform of a French regiment, and having called yourself an officer in the troops of his Majesty, should be delivered up to him for these outrages, as a Frenchman, to be sent to France ; and wished us in this stage of your prosecution, to take into mature consideration, and in the most solemn manner to determine :—
 

 1. Whether you could be legally delivered up by council, according to the claim made by the late minister of France?
 

 2. If you could not be thus legally delivered up, whether your offences in violation of the law of nations, being now ascertained and' verified according to the laws of this commonwealth, you ought not to be imprisoned, until- his most Christian Majesty shall declare, that the reparation is satisfactory ?
 

 3. If you can be imprisoned, whether any legal act can be done by council, for causing you to be so imprisoned ?
 

 *nfíl *To ^ese questions we have given the following answers in -* writing:—
 

 “ In compliance with the request of his Excellency the President, and the Honorable the Supreme Executive Council, we postponed passing sentence upon Charles Julian de Longchamps, until we had maturely considered the three questions above proposed for our determination. On the 10th and 12th days of July, the several. questions were argued before the court by five counsel, two on the affirmative and three on the negative side. We have kept the matter under advisement until this day, and now deliver our opinion thereupon.
 

 
 *119
 
 “ 1 And as to the first question, we answer, that it is our cpinion, that, in this case, Charles Julian de Longehamps cannot be legally delivered up by council, according to the claim made by the minister of France. Though, we think, cases may occur, where council could,
 
 pro bono
 
 publico, and to prevent atrocious offenders evading punishment, deliver them up to the justice of the country to which they belong, or where the offences were committed.
 

 “ 2. Punishments must be inflicted in the same county where the criminals were tried and convicted, unless the record of the attainder be removed into the supreme court, which may award execution in the county where it sits ; they must be such as the laws expressly prescribe ; or where no stated or fixed judgment is directed, according to the legal direction of the court; but judgments must be certain and definite in all respects. Therefore, we conclude, that the defendant cannot be imprisoned, until his most Christian Majesty shall declare that the reparation is satisfactory.
 

 “ 3. The answer to the last question is rendered unnecessary, by the above answer to the second question.”
 

 The foregoing answers having been given, it only remains for the court to pronounce sentence upon you. This sentence must be governed by a due consideration of the enormity and dangerous tendency of the offences you have committed, of the wilfulness, deliberation and malice wherewith they were done, of the quality and degree of the offended and offender, the provocation given, and all other circumstances which may any way aggravate or extenuate the guilt.
 

 The first crime in the indictment is an infraction of the law of nations. This law, in its full extent, is a part of the law of this state, and is to be collected from the practice of different nations, and the authority of writers. The person of a public minister is sacred and' inviolable. Whoever offers any violence to him, not only affronts the sovereign he represents, but also hurts the common safety and well-being of nations — he is guilty of a crime against the whole world.
 

 *A11 the reasons, which establish the independency and inviolability of the person of a minister, apply likewise to secure the immuni- [*111 ties of his house. It is to be defended from all outrage ; it is under a peculiar protection of the laws ; to invade its freedom, is a crime against the state and all other nations.
 

 The
 
 comites
 
 of a minister, or those of his train, partake also of his inviolability. The independence of a minister extends to all his household; these are so connected with him, that they enjoy his privileges and follow his fate. The secretary to the embassy has his commission from the sovereign himself ; he is the most distinguished character in the suit of a public minister, and is, in some instances, considered as a kind of public minister himself. Is it not, then, an extraordinary insult, to use threats of bodily harm to his person, in the domicil of the minister plenipotentiary ? If this is tolerated, his freedom of conduct is taken away, the business of his sovereign cannot be transacted, and his dignity and grandeur will be tarnished.
 

 You then have been guilty of an atrocious violation of the law of nations ; you have grossly insulted gentlemen, the peculiar objects of this law (gentlemen of amiable characters, and highly esteemed by the govern
 
 *120
 
 ment of this state), in a most wanton and unprovoked manner : and it is now the interest as well as duty of the government, to animadvert upon your conduct with a becoming severity — such a severity as may tend to reform yourself, to deter others from the commission of the like crime, preserve the honor of the state, and maintain peace with our great and good ally, and the whole world.
 

 A wrong opinion has been entertained concerning the conduct of Lord Chief Justice Ilolt and the court of king’s bench, in England,- in the noted case of the Russian ambassador. They detained the offenders, after conviction, in prison, from term to term, until the Czar Peter was satisfied, without ever proceeding to judgment; and from this, it has been inferred, that the court doubted, whether they could inflict any punishment for an infraction of the law of nations. But this was not the reason. The court never doubted, that the law of nations formed a part of the law of England, and that a violation of'this general law could be punished by them ; but no punishment less than death would have been thought by the Czar an adequate reparation for the arrest of his ambassador. This punishment they could not inflict, and such a sentence as they could have given, he might have thought a fresh insult. Another expedient was, therefore, fallen upon. However, the princes of the world, at this day, are more enlightened, and do not require impracticable nor unreasonable reparations for injuries of this kind. 0 '
 

 The second offense charged in the indictment, namely, the assault and battery, need no observations.
 

 Upon the whole, the Court, after a most attentive consideration of every circumstance in this case, do award, and direct me to pronounce the following sentence :—
 

 !|:That you pay a fine of one hundred French crowns to the commonwealth ; that you be imprisoned until the 4th day of July 1786, which will make a little more than two years’ imprisonment in the whole ; that you then give good security to keep the peace, and be of good behavior to all public ministers, secretaries to embassies and consuls, as well as to all the liege people of Pennsylvania, for the space of seven years, by entering into a recognisance, yourself in a thousand pounds, and two securities in five hundred pounds each : that you pay the costs of this prosecution, and remain committed until this sentence be complied with,
 

 (a)
 

 (a)
 

 See Ex parte Cabrera, 1
 
 W.
 
 C. C. 232; United States v. Little, 2 Id. 205; United States
 
 v.
 
 Hand, Id. 435; United States
 
 v.
 
 Ortega, 4 Id. 531,