Kenneth W. CHASE, Appellant,

v.

STATE of Alaska, Appellee.

No. 1217.

Supreme Court of Alaska.

Jan. 7, 1971.

---

James K. Tallman, Anchorage, for appellant.

Harold W. Tobey, Dist. Atty., Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, G. Kent Edwards, Atty. Gen., Juneau, for appellee.

Before BONEY, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ., and LEWIS, Superior Court Judge.

## OPINION

BONEY, Chief Justice.

In this appeal, Kenneth W. Chase seeks reversal of a judgment rendered by the superior court, third judicial district, denying his application for a writ of habeas corpus.

On April 29, 1969, Magistrate L. Arlene Clay sentenced Chase, who had entered a plea of guilty on a charge of possession of a firearm while intoxicated,[1] to a 90 day term of imprisonment.[2] Several days later, on May 2, Magistrate Clay amended Chase's original sentence by providing:

> It is hereby ordered that the defendant be released to the custody of Mr. Mueller of the BLM [Bureau of Land Management] for the fire fighting season. *Remaining sentence to be served beginning the day the fire fighting season ends or defendant is terminated from the*

---

1. AS 11.55.070 provides:

   A person who, while under the influence of intoxicating liquor or an exhilarating or stupefying drug, carries, has in his possession or under his control, or uses or discharges a firearm is guilty of a misdemeanor, and upon conviction is punishable by a fine of not more than $1,000, or by imprisonment in a jail for not more than one year, or by both.

2. The judgment actually imposed a sentence of 180 days, but 90 days were suspended, thus leaving only 90 days to be served in prison. Additionally, the sentence required that Chase maintain good behavior for a period of one year following his release from custody.

*job for any reason,* whichever is the sooner, and under the same conditions as the original judgment. (Emphasis supplied.)

The precise circumstances under which the amended sentence was issued are not clear. However, it appears that Chase was a skilled fire fighter in the employ of the Bureau of Land Management (BLM), and that, at the time of Chase's conviction, the forest fire season had just begun. In accordance with the amended order of the court, Chase returned to work as a fire fighter for the BLM and continued in that capacity until November 4, at which time he was arrested pursuant to a bench warrant issued by the district court. The bench warrant was issued by the court on the theory that Chase was required to complete serving his original 90 day sentence because the fire fighting season had ended.[3]

Chase, however, was of a different view. Shortly after his arrest, he filed with the superior court a complaint for writ of habeas corpus, contending that, under the amended sentence of May 2, he had no more time left to serve. At a hearing held pursuant to Chase's complaint it developed that the focal point of the difference between Chase and the state was the proper interpretation to be given to Magistrate Clay's amended sentence.

The state, on the one hand, contended that the amended sentence was meant only to defer the date when Chase would re-sume serving his sentence. Chase, on the other hand, maintained that the court had intended his 90 day sentence to run while he was in the custody of Mr. Mueller of the BLM, and as long as the fire fighting season continued. The superior court agreed with the views asserted by the state, and ruled that Chase's arrest was proper.

Chase now asks this court, on appeal, to reverse the ruling of the superior court. He argues that Magistrate Clay's amended sentence of May 2 was ambiguous, and must therefore be construed to mean that his sentence expired while he was employed fighting fires with the BLM. Chase further argues that if the May 2 amended sentence was intended only to defer the date upon which he would resume serving his 90 day term, then the amended sentence would in effect have increased the severity of his original sentence and would thus have been void.

■ It is axiomatic that trial courts' final judgments, particularly sentences calling for incarceration in criminal matters, must be framed with clarity and accuracy in order to avoid the possibility of injustice and confusion. Broad and uniform recognition has been given to the precept that a sentence imposed by a court acting in a criminal case should be definite, unequivocal and unambiguous, so that both the defendant and the officials charged with executing the sentence will be fairly apprised of the intentions of the court.[4] It is simi-

---

3. It is not clear from the record when the fire fighting season ended; nor is it clear that the season had in fact ended at the time Chase was arrested. Since the point is not raised on appeal, however, we must assume that the fire fighting season was already over on November 4, 1969.

4. *See, e. g.,* Montos v. Smith, 406 F.2d 1243, 1245–1246 (5th Cir. 1969); Byrd v. United States, 345 F.2d 481, 483 (10th Cir. 1965); Robles v. United States, 279 F.2d 401, 407 (9th Cir. 1960); Holloway v. United States, 89 U.S.App.D.C. 332, 191 F.2d 504 (1951). *See also* Hereford v. State, 380 S.W.2d 120 (Tex.Cr.App.

1964); Jackson v. State, 168 Tex.Cr.R. 436, 328 S.W.2d 765 (1959).

The origin of the principle that a sentence imposed in a criminal matter must be definite and unambiguous is usually attributed to the United States Supreme Court ruling in United States v. Daugherty, 269 U.S. 360, 46 S.Ct. 156, 157, 70 L.Ed. 309, 313 (1926), where it was held:

Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them. The elimination of every possible doubt cannot be demanded.

larly well established that where a criminal sentence is ambiguous, it must be interpreted in favor of the individual who has been deprived of his liberty.[5] At the same time, however, it is apparent that the elimination of all doubt in sentencing is frequently not possible; consequently, the validity of a sentence will not be affected where, despite technical imperfection or uncertainty, there can be no reasonable doubt as to the intention of the sentencing court.[6]

In the instant case, Chase's amended sentence is manifestly ambiguous. A reading of the language of the amended sentence could leave either of two impressions: First, it might be thought that Magistrate Clay intended Chase's work as a fire fighter with the BLM to replace his original term of imprisonment. Second, it might be concluded that the magistrate meant only to defer the date when Chase would serve out the balance of his original sentence. The amended sentence is, on its face, open to both interpretations.

This ambiguity cannot be classified as merely technical, since Chase may properly be re-incarcerated only if the second of the two possible meanings is accepted. Furthermore, the ambiguity in the instant case is not justified by any particular difficulty or complexity in the nature of the sentence which the court sought to impose; rather, the ambiguity here is merely the product of inartful and inattentive drafting. With a minimal amount of care in phrasing, Magistrate Clay could have made her intention clear.

Although it concedes that the amended sentence in the present case was imprecisely written, the state argues that various circumstances and evidence outside the record make plain the fact that the magistrate did not intend Chase's sentence to run while he was employed fighting fires. Yet this argument misses the point. The specific purpose of requiring that a sentence be precisely written is to assure that clear and immediate notice be given of the nature of the sentence imposed, thereby rendering unnecessary subsequent judicial construction. The recent holding of the Illinois Court of Appeals in People v. Walton [7] is appropriate on this point:

A sentence should be so complete as not to require construction by the court to ascertain its import, and so complete that it will not be necessary for a nonjudicial

However, the principle was enunciated as early as 1784, by the Supreme Court of Pennsylvania in Respublica v. De Longchamps, 1 U.S. (1 Dall.) 111, 1 L.Ed. 59, 62 (1784). In that case, the Chevalier De Longchamps was charged with threatening and striking Francis Barbe Marbois, the Consul General of France to the United States. Monsieur Marbois requested the Court, which had asserted original jurisdiction in the matter, to deliver the Chevalier De Longchamps to the French government for trial and punishment. Alternatively, Marbois asked that De Longchamps be imprisoned indefinitely, until such time as the King of France had declared satisfaction. The Court, speaking through Chief Justice M'Kean, denied both requests, holding first that "[p]unishments must be inflicted in the same county where the criminals were tried and convicted * * *", and second, that indefinite incarceration was precluded because "judgments must be certain and definite in all respects."

The issue has been raised in Alaska on only one previous occasion. Hulse v. Potter, 17 Alaska 353 (D.Alaska 1957). The Hulse case is, on its facts, distinguishable from the present case and thus offers little assistance.

5. See, for example, United States v. Young, 174 F.Supp. 422 (D.C.N.D.1959); Favors v. State, 95 Ga.App. 318, 97 S.E.2d 613, 614 (1957).

6. Thus, for instance, in Valdez v. United States, 249 F.2d 539, 542 (5th Cir. 1957), it was held:

While it is true that a sentence must not be indefinite and equivocal, abstract perfection of phrasing is not required. and it is sufficient if the intention may be gathered from the judgment as a whole.

See also United States v. Daugherty, 269 U.S. 360, 46 S.Ct. 156, 70 L.Ed. 309, 313 (1926); and State v. Laden, 42 N.J. Super. 540, 127 A.2d 404 (1956).

7. 118 Ill.App.2d 324, 254 N.E.2d 190, 194–95 (1969).

or ministerial officer to supplement the written words to ascertain its meaning.[8]

■ We conclude, then, that because of its ambiguity, the amended sentence in the present case does not adequately express the intent of the sentencing magistrate. We could, of course, speculate as to which of the two possible meanings discussed above was probably intended by Magistrate Clay. However, to state that the sentencing magistrate probably intended one meaning falls far short of establishing that she could not reasonably have intended the other. Under these circumstances, we should, in accordance with established authority, resolve the ambiguity in favor of Chase by holding that the sentencing court intended Chase's work for the BLM, as provided for in the amended sentence, to replace the term of imprisonment which had originally been imposed.

Moreover, an additional consideration guides us to the same conclusion in the present case. On April 29, 1969, Magistrate Clay first entered judgment against Chase, sentencing him to a 90 day term of imprisonment. Magistrate Clay's ambiguous amended sentence was subsequently rendered on May 2, 1969; the amended sentence released Chase to the custody of Mr. Mueller of the BLM, and provided that Chase was to serve his "remaining sentence" at the end of the fire fighting season or when he was terminated from his work as a fire fighter. If this amended sentence is construed to have replaced Chase's initial term of imprisonment by employment as a fire fighter with the BLM, then the sentence would have been in effect similar to a work release.[9] Thus, the amended sentence would have meant that each day Chase spent working for the BLM would be considered the equivalent of a day spent in jail; because Chase spent more than 90 days with the BLM after the date of the amended sentence, it would follow that his full term of imprisonment expired while he worked as a fire fighter. Without doubt, such a sentence would have been well within the power accorded to a sentencing magistrate under Alaska law.[10]

■ However, if the contrary interpretation is given to the amended sentence—in other words if the amended sentence is construed to mean that Chase's term of imprisonment was merely deferred while he was working for the BLM—then the validity of the sentence is subject to substantial doubt. Viewed as a deferral of the imprisonment imposed in the original sentence, the amended sentence would have required Chase to serve the full term of imprisonment originally imposed, and would have added thereto the period of time spent in the custody of Mr. Mueller of the BLM.[11] Construed in this manner, then, the amend-

8. The language of the court in State v. Owen, 2 Ariz.App. 580, 410 P.2d 698, 700 (1966) provides another good example:
   A sentence is a final judgment and it should be sufficient on its face to effect its purpose without resort to evidence in aid thereof, and should further convey to the authorities clear and unequivocal orders of the trial court so that they may know definitely how long to detain the convict.
   See also People v. Toomer, 14 Ill.2d 385, 152 N.E.2d 845 (1958); Merritt v. Commonwealth, 447 S.W.2d 625 (Ky.1969); Ex Parte Lewis, 414 S.W.2d 682 (Tex. Cr.App.1967); State ex rel. Wright v. Boles, 150 W.Va. 381, 146 S.E.2d 524, 527–528 (1966).

9. See AS 33.30.250, which provides, in certain cases, for an administrative "work furlough".

10. AS 12.55.080 provides:
    Upon entering a judgment of conviction of a crime, or at any time within 60 days from the date of entry of that judgment of conviction, any court, when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby. may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation for a period and upon the terms and conditions as the court considers best.

11. We must emphasize the fact that Magistrate Clay did not simply allow Chase to remain free until his work as a fire fighter with the BLM terminated. There is little doubt that Magistrate Clay would have been authorized, under the language of AS 12.55.080, cited supra n. 10, to

ed sentence would have imposed an additional requirement to the original sentence, and would thus have amounted to an increase in sentence. Yet in the case of Faulkner v. State [12] we held that a court does not have the power to amend a sentence in a manner which would increase the severity of the punishment originally imposed. Hence, Magistrate Clay's amended sentence, if taken merely to defer imprisonment, would have been unlawful and void under our holding in *Faulkner*.

Thus, in choosing between the two possible interpretations of the amended sentence in this case we may take guidance from the general principal that, in interpreting doubtful or ambiguous judgments, we should, wherever possible, adopt a meaning which would uphold the validity of the judgment. This consideration, coupled with the settled rule that in criminal matters any ambiguity in sentencing must be resolved in favor of the defendant, leads us to the conclusion that the amended sentence in the present case must be read in the manner urged by Chase. We hold, then, that Magistrate Clay's amended sentence allowed Chase's original 90 day term of imprisonment to run while he was in the custody of Mr. Mueller of the BLM. Because Chase was employed as a fire fighter with the BLM for more than 90 days after the date of the amended judgment, we further hold that he cannot properly be required to serve any portion of the 90 day term originally imposed.

The ruling of the superior court is reversed, and the case is remanded with instructions that the appellant's complaint for writ of habeas corpus be granted in accordance with the foregoing opinion.

---

suspend the imposition of her original sentence while Chase worked for the BLM. Nothing in this opinion is meant to discourage magistrates from amending a sentence to allow a period of liberty during which the convicted individual could pursue gainful employment prior to serving his term of imprisonment. Indeed, such flexibility in sentencing is desirable, and should be encouraged.

However, this case involves something more than a mere deferral of the sentence originally imposed, since the magistrate explicitly provided that Chase was to "be released *to the custody* of Mr. Mueller of the BLM" for the duration of the fire fighting season. Thus, the magistrate's order, if construed as a deferral of sentence, would in effect have added a period of custody to the original term of imprisonment.

The state has argued that such an order did not provide for any particular restraints to be placed upon Chase, and that probably no unusual restraints were in fact imposed during the time he spent with the BLM. We have no way of telling whether Chase was actually supervised or restrained while in the custody of Mr. Mueller. It would, indeed, make little difference if we knew. The fact that the amended sentence provided specifically that Chase was to be placed in the custody of Mr. Mueller is in itself sufficient to establish that Chase's liberty was restricted during the period in question. Mr. Mueller might not actually have subjected Chase to any amount of special supervision or control during the period in question, but under the provision of the amended sentence relinquishing Chase to Mr. Mueller's custody, there was always a possibility that such supervision or control would be imposed.

12. 445 P.2d 815, 819-820 (Alaska 1968).