James BAUM and Raymond Baum, Appellants,

v.

STATE of Alaska, Appellee.

No. A–7622.

Court of Appeals of Alaska.

March 30, 2001.

---

Kevin T. Fitzgerald, Ingaldson Maassen, P.C., Anchorage, for Appellant.

Douglas H. Kossler, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, J.

This appeal presents two major issues of law dealing with the range of permissible punishments for big-game guiding offenses. First, when a person is convicted of a big-game guiding offense, does forfeiture of an airplane worth $40,000 violate the excessive fines clause of the Eighth Amendment to the United States Constitution? For the reasons explained here, we conclude that the answer is "no". Second, if the applicable sentencing statute gives the court the authority to suspend or revoke a defendant's hunting license for up to a maximum number of years, does the sentencing judge nevertheless retain the power to place the defendant on probation for a greater number of years and, as a condition of probation, order the defendant not to obtain a hunting license? For the reasons explained here, we conclude that the answer is "yes".

*Underlying facts, and the two primary contentions raised on appeal*

James Baum, a licensed game guide, was convicted of possessing and transporting un-

lawfully taken game.[1] As part of Baum's sentence, Superior Court Judge Michael L. Wolverton ordered forfeiture of the airplane that Baum had used in the hunt.

James Baum was not the owner of this airplane; he only leased it. The plane was owned by his brother, Raymond Baum. Raymond asked the superior court for a remission of this forfeiture, asserting that he had nothing to do with his brother's violation of the game laws.

In *State v. Rice*[2] and *Fehir v. State*[3], our supreme court held that when a court orders forfeiture of property as part of a criminal sentence, and if someone else owns that property or holds a secured interest in it, the owner or interest-holder must be given the opportunity to avoid the forfeiture by showing that they were not involved in the defendant's wrongdoing and that they were not negligent in entrusting the property to the defendant—that they did "all that could reasonably be expected to prevent [the] illegal use [of the property]".[4]

This hearing is called a "remission" hearing even though it sometimes occurs before the sentencing court actually declares the forfeiture. In the present case, for example, Judge Wolverton knew that Raymond Baum would be protesting the forfeiture, so the judge held Raymond's remission hearing as part of the sentencing proceedings. Judge Wolverton did not order the forfeiture of the airplane until he had heard and rejected Raymond's claim that he was an innocent, non-negligent owner.

During the litigation of Raymond Baum's remission claim, Raymond testified that the airplane was currently worth around $40,000. On the basis of this testimony, Raymond Baum now asserts that the forfeiture of the airplane violates the excessive fines clause of the Eighth Amendment.

As another part of James Baum's sentence, Judge Wolverton placed Baum on probation for 10 years. As a condition of Baum's probation, Judge Wolverton ordered Baum "not [to] apply for a hunting or guiding license [during the entire 10–year] period of probation".

James Baum asserts that this condition of probation is illegal. He argues that the sentencing provisions applicable to his offense, AS 16.05.410(b)-(c), only authorize a sentencing court to revoke a repeat-offender's hunting license "for a period of not ... more than three years". Based on these sentencing provisions, Baum contends that Judge Wolverton exceeded his sentencing authority when he used Baum's conditions of probation to prohibit Baum from hunting or guiding for 10 years.

Baum also argues that AS 16.05.410(b)-(c) limited Judge Wolverton's authority to revoke Baum's guiding license (in distinction to his hunting license). But the "licenses" covered by that statute are the licenses issued under AS 16.05—*i.e.*, hunting, sport-fishing, trapping, fur-dealing, and taxidermy licenses.[5] The issuance and revocation of guiding licenses are governed by AS 8.54.

For purposes of deciding this appeal, we will assume that the superior court's revocation of Baum's guiding license was governed by AS 8.54.720(f)(2), which declares that when a licensed guide is convicted of violating a state game statute or regulation, the sentencing court must revoke the defendant's guiding license for "not more than five years".

*Forfeiture of a $40,000 airplane for a guiding offense does not violate the excessive fines clause of the Eighth Amendment*

 Judge Wolverton ordered forfeiture of the airplane as part of James Baum's sentence for violating the game laws. The forfeiture of the airplane was therefore an *in personam* forfeiture (*i.e.*, a forfeiture inflicted as punishment for a crime) as opposed to an *in rem* forfeiture (*i.e.*, a forfeiture resulting from an independent civil action brought

---

1. 5 AAC 92.140.

2. 626 P.2d 104 (Alaska 1981).

3. 755 P.2d 1107 (Alaska 1988).

4. *Rice,* 626 P.2d at 114.

5. *See* AS 16.05.330(a) and 340(a).

by the government against the "offending" property).[6]

■ Raymond Baum argues that when a property owner asks for remission of an *in personam* forfeiture, the property owner's request converts the forfeiture proceeding into an *in rem* proceeding. Baum has presented no legal authority to support this argument, and the supreme court's discussions in *Rice* and *Fehir* suggest that Baum is wrong. For these reasons, we reject Raymond Baum's argument.

■ But the fact that the forfeiture of Baum's airplane was an *in personam* forfeiture does not necessarily mean that Baum's excessive fines argument fails. In *Hillman v. Anchorage*[7], this court recognized that "the Eighth Amendment's proscription on 'excessive fines' extends to *in personam* forfeitures."[8] An *in personam* forfeiture—that is, a forfeiture imposed as punishment for a crime—will violate the Eighth Amendment if it is "grossly disproportionate to the defendant's offense".[9]

Raymond Baum argues that forfeiture of an airplane worth $40,000 is grossly disproportionate to James Baum's offense of possessing and transporting illegally taken game. But under AS 8.54.720(a)(8) and 720(c)-(d), when a licensed guide violates a hunting statute or regulation, or aids another person in doing so, the penalty for a first offense includes "a fine of not more than $30,000", while the penalty for a second or subsequent offense includes a fine of up to $50,000 (the maximum fine for a class C felony).[10]

Given these statutory penalties, we conclude that forfeiture of an airplane worth $40,000 is not grossly disproportionate to James Baum's offense. We therefore reject Raymond Baum's contention that this forfeiture violates the Eighth Amendment.

*The record supports the superior court's finding that Raymond Baum was not an innocent, non-negligent owner*

■ As his second point on appeal, Raymond Baum challenges Judge Wolverton's finding that Baum was not an innocent, non-negligent owner. As explained above, when the owner of property seeks remission of a forfeiture, the owner bears the burden of proving that they did "all that could reasonably be expected to prevent [the] illegal use [of the property]".[11]

The testimony presented at the remission hearing shows that Raymond Baum purchased the airplane in 1992 for $18,000. Raymond relied on his brother James to arrange the purchase. After spending $7000 to restore the plane to flying condition, Raymond began leasing the plane to his brother James in 1994. For the use of this plane and one other, James agreed to pay Raymond $6000 per year. Thus, during the next five years, because of James Baum's guiding activities, Raymond Baum made many thousand dollars on his airplane investment.

Raymond conceded that he knew that James would be using the airplane in his guiding business. Raymond also conceded that he knew James had been convicted of guiding violations in the past, and that James had earlier suffered the forfeiture of an airplane for his guiding offenses.

At the conclusion of this evidence, Judge Wolverton found that Raymond Baum knowingly took a risk when he purchased the airplane and leased it to his brother for use in the guiding business. Apparently based on the indications that James Baum's guiding business had provided all of the money to repair and maintain the airplane, Judge Wolverton concluded that Raymond and James were engaged in a "joint venture with respect to the plane". Judge Wolverton also

**6.** See *Hillman v. Anchorage,* 941 P.2d 211, 215 (Alaska App.1997).

**7.** 941 P.2d 211 (Alaska App.1997).

**8.** *Id.* at 216.

**9.** *Id.* The United States Supreme Court recently re-affirmed this test in *United States v. Bajakaji-*

*an,* 524 U.S. 321, 333–34, 118 S.Ct. 2028, 2036, 141 L.Ed.2d 314 (1998).

**10.** *See* AS 12.55.035(b)(2).

**11.** *Rice,* 626 P.2d at 114.

found that Raymond knew the risk that his brother James might use the airplane to break the law, and he unreasonably discounted or ignored this risk. This was essentially a finding that Raymond acted "recklessly" as that term is defined in AS 11.81.900(a)(3).

Viewing the record in the light most favorable to upholding the superior court's findings, Judge Wolverton could properly find that Raymond Baum bought the airplane knowing that James Baum would use it to make money guiding, and that he leased it to James with the anticipation that James's lease payments would cover all of the annual costs of upkeep and insurance. Indeed, Raymond testified that "[t]hat was the beauty of this agreement." The record further supports Judge Wolverton's conclusion that the two brothers engaged in a joint venture with respect to the airplane, and that Raymond consciously disregarded the known risk that James would violate the law while using the plane in his guiding business.

In *Rice*, the supreme court declared that, in requiring remission of forfeitures for innocent, non-negligent owners, the court was thinking of owners who could show that, "prior to parting with the property[, they] did not know, nor [did they] have reasonable cause to believe, either that the property would be used to violate the law *or that the violator had a criminal record or a reputation for commercial crime*".[12] Raymond Baum, by his own admission, fails this test. Moreover, Judge Wolverton found that Raymond Baum not only was aware of the risk but also had a financial interest in ignoring this risk.

Given this record and Judge Wolverton's findings, it is clear that Raymond Baum was not an innocent, non-negligent owner. We therefore uphold Judge Wolverton's decision to deny Raymond Baum's request for remission of the forfeiture.

*A sentencing court can, as a condition of probation, forbid a defendant from obtaining a license or engaging in licensed activity for a longer period of time than the maximum suspension or revocation period that the court might impose as a direct term of the defendant's sentence*

■ The remaining point on appeal concerns James Baum's sentence. As explained above, Judge Wolverton placed Baum on probation for 10 years and, as a condition of his probation, Judge Wolverton ordered Baum not to apply for a hunting or guiding license. Baum asserts that this condition of probation is illegal because it effectively prohibits him from engaging in hunting and big-game guiding for more than the maximum license revocation authorized by the relevant sentencing statutes.

The State argues that Baum has misconstrued the sentencing statutes, but we conclude that we do not need to resolve that controversy. Even if Baum has correctly interpreted the sentencing statutes—that is, even if the superior court was only authorized to impose a 3–year revocation of Baum's hunting license and a 5–year revocation of his guiding license as a direct term of Baum's sentence, Judge Wolverton nevertheless had the additional authority to impose a condition of probation that prohibited Baum from hunting or guiding throughout the entire 10–year period of probation.

■ This court has previously recognized that a sentencing court can impose certain punishments—for instance, restitution to the victim of a crime—either as a direct term of the defendant's sentence or as a condition of the defendant's probation (or both).[13] In Alaska, sentencing courts have broad authority to fashion conditions of probation so long as the conditions are reasonably related to the probationer's rehabilitation or the protection of the public.[14] Indeed, in *Brown v. State*[15], the supreme court held that a sen-

**12.** *Id.*, 626 P.2d at 114 (quoting 19 C.F.R. § 171.13(a)) (emphasis added).

**13.** *See Kelly v. State*, 842 P.2d 612, 613–14 (Alaska App.1992).

**14.** *See Roman v. State*, 570 P.2d 1235, 1240 (Alaska 1977); *Whitehead v. State*, 985 P.2d 1019, 1020 (Alaska App.1999).

**15.** 559 P.2d 107 (Alaska 1977).

tencing court might order a defendant to pay a fine as a condition of probation even though the applicable sentencing statute did not authorize imposition of a fine as a direct term of the defendant's sentence.[16]

In *Wylie v. State*[17], this court noted, but did not resolve, the question of whether a sentencing court might use conditions of probation to restrict a defendant from engaging in a licensed activity for longer than the maximum license suspension or revocation period specified in the sentencing statute. But courts in other jurisdictions generally hold that a sentencing court has this power.

For example, in *People v. Dickens*[18], the defendant was convicted of negligent homicide for killing a person with his car. The Michigan Court of Appeals ruled that even though the pertinent sentencing statute specified a driver's license revocation of no more than 2 years, the sentencing court had the authority to order the defendant not to drive for 5 years as a condition of probation.[19]

And in *State v. Nelson*[20], the defendant was convicted of driving while intoxicated "with fatality resulting". The Vermont Supreme Court ruled that even though the applicable penalty provision allowed only a 1-year revocation of the defendant's driver's license, the sentencing court could nevertheless impose a condition of probation forbidding the defendant from driving a motor vehicle for the entire duration of his probation.[21]

■ We are persuaded by these decisions from other states because they reflect a view of a sentencing court's probationary authority that is most consistent with the approach taken by this court and the Alaska Supreme Court. Probation conditions often restrict a defendant's activities beyond the limits of what a sentencing court might impose as a direct component of the defendant's sentence. Such conditions of probation are lawful so long as they are reasonably related to the probationer's rehabilitation or the protection of the public, and so long as they do not unjustifiably infringe a defendant's constitutional rights.

James Baum has been convicted of hunting violations before. He has previously suffered the forfeiture of two airplanes for his violations. Despite these prior convictions and punishments, he continues to violate the hunting laws of this state. Judge Wolverton could reasonably conclude that the goals of rehabilitation and protection of the public would be served by a condition of probation forbidding Baum from engaging in hunting or guiding for the next 10 years. For these reasons, we uphold the challenged condition of probation.

### Conclusion

We have concluded that forfeiture of a $40,000 airplane is not grossly disproportionate to James Baum's offense. We have also concluded that Judge Wolverton was not clearly erroneous when he denied Raymond Baum's request for remission of this forfeiture—*i.e.*, when he ruled that Raymond Baum had failed to prove that he was an innocent, non-negligent owner. Finally, we have concluded that a sentencing court has the power to impose a condition of probation that prohibits a defendant from pursuing a licensed activity for longer than the maximum period of license suspension or revocation that might be imposed as a direct term of the defendant's sentence.

Accordingly, the judgement of the superior court is AFFIRMED.

**16.** *See id.* at 109–110.

**17.** 797 P.2d 651, 663 n. 11 (Alaska App.1990).

**18.** 144 Mich.App. 49, 373 N.W.2d 241 (1985).

**19.** *See id.* at 245.

**20.** 170 Vt. 125, 742 A.2d 1248 (1999).

**21.** *See id.* at 1251–53.