Michael M. ALVIN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7908.

Court of Appeals of Alaska.

March 8, 2002.

Tena M. Foster, Rupright & Foster, LLC., Wasilla, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Michael M. Alvin was convicted of criminally negligent homicide, failure to render assistance at the scene of an injury accident, and driving while intoxicated.[1] When Superior Court Judge Larry D. Card sentenced Alvin for these crimes, he declared that "[Alvin's] permit to drive any vehicle is hereby revoked for life. [He] shall not ever drive a motor vehicle again." However, Judge Card said this during his announcement of Alvin's conditions of probation, and he in fact referred to the license revocation as "[Condition] Number 10".

The question is whether Judge Card imposed the revocation of Alvin's license as a condition of probation or as a direct component of Alvin's sentence. The answer makes a substantial difference in the sentence. If the license revocation is a condition of probation, then it operates only during the 10–year term of Alvin's probation. If, on the other hand, it is a direct component of the sentence, then Alvin's driver's license is revoked for life.

We conclude that Judge Card's sentencing remarks demonstrate beyond a reasonable doubt that he intended to bar Alvin from ever again driving a motor vehicle—a result that could be achieved only if the license revocation was a direct component of Alvin's sentence. We thus conclude that Judge Card made an objectively ascertainable mistake when he referred to the license revocation as a condition of Alvin's probation.

*Underlying facts: the imposition of sentence, the ensuing written judgement, and Alvin's later motion to modify the written judgement*

On September 25, 1996, Alvin appeared for sentencing in front of Judge Card. After Judge Card announced the terms of imprisonment for Alvin's two felonies (negligent homicide and leaving the scene of an injury accident), the judge then stated that he was "going to follow the recommendations [of the pre-sentence investigator]" and impose special conditions of probation "in addition to the general conditions ... normally associated with probation."

Judge Card then began reciting these special conditions of probation. The pre-sentence investigator had proposed ten special conditions of probation, and Judge Card initially started to impose conditions from the list contained in the pre-sentence report. But when he got to Condition Number 6—which read: "Not drive unless insured and provide proof of insurance to the Probation/Parole Officer"—Judge Card said:

> *The Court:* Number 6, not drive unless you're insured. Let me take that back. Excuse me. Disregard Number 6. I'll come back to that in a second.

Judge Card then announced a new "[Condition] Number 6" that tracked the language of the pre-sentence investigator's proposed Condition Number 7 ("obtain a substance abuse evaluation while in custody and participate in treatment as recommended by the program"). In other words, Judge Card omitted the pre-sentence investigator's proposed Condition Number 6 and skipped ahead to the next proposed condition, renumbering the list. Proceeding in this fashion, Judge Card imposed all the remaining conditions proposed by the pre-sentence investigator. The judge numbered these conditions "7", "8", and "9" (instead of "8", "9", and "10"—the numbers given to them in the pre-sentence report).

---

**1.** AS 11.41.130(a), AS 28.35.060(a), and AS 28.35.030(a), respectively.

After he had done this, Judge Card returned to the subject of Alvin's driver's license:

> *The Court:* Number 10: Your permit to drive any vehicle is hereby revoked for life. You shall not ever drive a motor vehicle again.

This statement concluded Judge Card's imposition of sentence on Alvin's felonies. He then addressed Alvin's remaining conviction (the misdemeanor conviction for driving while intoxicated) and imposed sentence on that charge.

A few minutes later, Judge Card returned to the subject of Alvin's driver's license. Again, he mentioned this subject during a discussion of Alvin's probation:

> *The Court:* Mr. Alvin shall be on probation at the conclusion of [his term of imprisonment] for a period of 10 years. [I have chosen] 10 years ... for maximum protection of the public. And I sincerely hope that Mr. Alvin never has any problems again. My goal is that Mr. Alvin will never get behind the wheel of a vehicle again, because I feel that he is just too dangerous for the public to be [taking that] risk.

Three weeks later, on October 14, 1996, Judge Card signed the written judgement. This written judgement contained only nine special conditions of probation; these were the ten conditions proposed by the pre-sentence investigator, minus the one condition that Judge Card rejected—the condition that Alvin not drive unless he was insured, which the pre-sentence investigator had originally numbered "6". In this written judgement, the revocation of Alvin's driver's license appears as a direct component of his sentence: "IT IS FURTHER ORDERED that defendant's driver's license is REVOKED for his lifetime."

Four and a half years after this written judgement was distributed, Alvin filed a motion asking Judge Card to modify this document. Alvin contended that the written judgement did not correctly reflect the sentence pronounced by Judge Card at the sentencing hearing. He pointed out that Judge Card had referred to the license revocation as "[Condition] Number 10" of Alvin's probation. Alvin therefore asked Judge Card to amend the written judgement by deleting the part that described the license revocation as a direct component of Alvin's sentence and by adding the license revocation to the list of Alvin's conditions of probation.

(As explained above, the practical effect of this change would be to convert the license revocation provision from a lifetime revocation to a 10–year revocation.)

Judge Card declined to amend the written judgement. The judge stated that he had "reviewed the official transcript of the sentencing hearing" and that this transcript demonstrated that he "clearly stated [his] intention on the record that the defendant never be permitted to get behind the wheel of a vehicle again.... [There is] no ambiguity in [the court's] stated intentions...."

Alvin now appeals Judge Card's decision.

*Judge Card's oral pronouncement of sentence clearly demonstrates his intention to revoke Alvin's driver's license for life*

■ Alvin's "true" sentence is the one that Judge Card pronounced at the sentencing hearing. If the written judgement does not accurately embody that oral sentence, then Alvin is entitled to have the written judgement changed.[2]

(This can be done at any time under Alaska Criminal Rule 35(a), because a non-conforming written judgement is an "illegal sentence" for purposes of that rule. *See Bishop v. Anchorage,* 685 P.2d 103, 105 (Alaska App. 1984).)

Because Alvin was convicted of negligent homicide, leaving the scene of an injury accident, and driving while intoxicated, Judge Card had the authority to revoke Alvin's driver's license as a direct component of his sentence. *See* AS 28.15.181(a)(1), (a)(3), and (a)(5). However, as noted above, Judge Card referred to the revocation of Alvin's license

---

**2.** *See Graybill v. State,* 822 P.2d 1386, 1388 (Alaska App.1991) ("[When] a conflict exists between an orally imposed sentence and a subsequently issued written judgment, it is well-settled that the oral pronouncement of sentence must govern.").

as probation condition number 10. Thus, the written judgement seemingly departs from the judge's oral pronouncement of sentence by describing the license revocation as a direct component of Alvin's sentence. But the ultimate issue is not Judge Card's wording, but rather his intention.

In *Shagloak v. State*, 582 P.2d 1034 (Alaska 1978), the supreme court held that a written judgement need not track the sentencing judge's precise words if the "contemporaneous record" (*i.e.*, the record as it existed at the time of sentencing) reveals that the judge made an "objectively ascertainable mistake" when describing the sentence.[3] An "objectively ascertainable mistake" exists when the judge's description of the sentence "obviously conflict[s] with the [judge's] intention".[4]

█ In *Shagloak*, the supreme court spoke of allowing an "increase" in the defendant's sentence if the contemporaneous record reveals an objectively ascertainable mistake. This is a little misleading, because the defendant's true sentence is the sentence that the judge intended to impose when sentence was pronounced. When the judge's sentencing intention is clear, the act of amending the written judgement to make it conform to the judge's intention does not constitute an "increase" in the sentence, but rather only a correction of the written judgement.

The heart of the *Shagloak* rule is the supreme court's recognition that the judicial power to amend the written judgement in a criminal case raises substantial double jeopardy problems. The double jeopardy clause generally forbids a court from reconsidering a sentence and altering it to the defendant's disadvantage. If the law allowed the court to amend a written judgement whenever the sentencing judge's original description of the defendant's sentence was ambiguous or unclear, or whenever for any other reason the court later decided that the written judge-

ment did not accurately describe the intended sentence, this power could easily serve as a screen for a judge's decision to reconsider the defendant's sentence and increase it. To make sure that the power of amendment is not misused in this fashion, the *Shagloak* decision established two rules to restrict it.

█ First, when the court and the parties seek to ascertain the sentencing judge's intention, they are confined to the contemporaneous sentencing record. Neither the State nor the court can rely on "the sentencing court's subsequent explanation of its subjective purpose".[5] Second, any reasonable debate regarding the sentencing judge's intention must be resolved in favor of the defendant. The written judgement can be amended to reflect a more severe sentence only when the contemporaneous record establishes beyond a reasonable doubt that the sentencing judge intended to impose this sentence.[6]

█ At Alvin's sentencing, Judge Card announced that Alvin's driver's license was "hereby revoked for life ... [so that he] shall not ever drive a motor vehicle again." A few minutes later, Judge Card explained that "[his sentencing] goal [was] that Mr. Alvin [would] never get behind the wheel of a vehicle again" because he concluded that Alvin "[was] just too dangerous for the public to be [taking that] risk."

True, Judge Card referred to the license revocation as condition number 10 of Alvin's probation, but there are two reasons why it is clear that Judge Card could not have intended the license revocation to be a condition of probation.

First, a judge's announcement that a defendant's driver's license is revoked does not appear to be a "condition of probation" as that term is normally understood. Probation is similar to a "contract between the court and the defendant".[7] For this reason, even

3. *Id.* at 1038.

4. *Id.*

5. *Cornwall v. State*, 902 P.2d 336, 339 (Alaska App.1995). *See also Shagloak*, 582 P.2d at 1038.

6. *See Cornwall*, 902 P.2d at 338 (citing *Coates v. State*, 721 P.2d 655, 657 (Alaska App.1986); *Chase v. State*, 479 P.2d 337, 340 (Alaska 1971)).

7. *Joubert v. State*, 926 P.2d 1191, 1193 (Alaska App.1996) (quoting *McRae v. State*, 909 P.2d 1079, 1083 (Alaska App.1996)).

though terms of probation are generally worded as commands, they are in a real sense promises: the defendant agrees to do something or agrees to refrain from doing something. But here, Judge Card simply declared that Alvin's license was revoked for life. He did not require Alvin to do anything or refrain from doing anything. The judge simply announced a penalty that he was imposing on Alvin.

(Compare this with the condition of probation imposed in *Baum v. State*, where the judge ordered the defendant "not [to] apply for a hunting or guiding license [during the entire 10–year] period of probation".[8] We held that this was a true condition of probation and not a direct revocation of the defendant's license.[9])

Second, Judge Card repeatedly declared that he intended to revoke Alvin's privilege to drive for the remainder of his life. This intention could not possibly be achieved through the conditions of Alvin's probation—because the obligations imposed by the conditions of probation expire when the term of probation expires[10], and Alvin's term of probation is only 10 years.

We therefore conclude that Judge Card made an objectively ascertainable mistake when he referred to the license revocation as a condition of Alvin's probation. Beyond a reasonable doubt, his intention was to revoke Alvin's driver's license for life. Every time Judge Card mentioned the subject of Alvin's driver's license, he unambiguously expressed his intent to revoke the license throughout Alvin's lifetime so that Alvin would never again drive a motor vehicle. Under these circumstances, Judge Card's reference to a probation condition is akin to clerical error—for the judge's intention could only be achieved by making the license revocation a direct component of Alvin's sentence.

Judge Card was therefore authorized to issue a written judgement that seemingly varied from his literal words at the sentenc-

ing hearing. When Judge Card's contemporaneous remarks are viewed as a whole, they unambiguously demonstrate that the judge's intention was to revoke Alvin's driver's license for life—and thus to make the license revocation a direct component of Alvin's sentence rather than a condition of his probation.

We have addressed similar situations in the past—situations where a sentencing judge's unambiguous intent was at variance with the wording the judge used to describe the defendant's sentence. In these situations, we have construed the defendant's sentence so as to implement the judge's clear intent despite the judge's apparently contrary wording.

For example, in *Merry v. State*, 752 P.2d 472 (Alaska App.1988), the sentencing judge stated that the defendant's sentences would be "concurrent", but the rest of the judge's sentencing remarks clearly established that the judge intended to impose consecutive sentences. We concluded that the judge "obviously misspoke when he used the word 'concurrent'", and we therefore held that the defendant's sentences were indeed consecutive.[11]

Again, in *Coates v. State*, 721 P.2d 655 (Alaska App.1986), the sentencing judge originally stated that 8 months of the defendant's sentence would be suspended, but the sentencing record unambiguously showed that the judge "[intended] to impose a total sentence that would require Coates to serve three years of unsuspended incarceration in addition to the time he had spent in juvenile detention"—and that the judge's decision to suspend 8 months of Coates's sentence "was made only as a means of allowing credit for the eight months Coates had spent in detention, which the judge believed would not otherwise be allowed."[12] We therefore upheld the judge's later action of amending the sentence to delete the reference to 8 suspended months, after it became clear that

---

8. 24 P.3d 577, 579 (Alaska App.2001).

9. *See id.* at 582.

10. *See Kelly v. State*, 842 P.2d 612, 614 (Alaska App.1992).

11. *Id.* at 474.

12. *Id.* at 658.

Coates was in fact entitled to 8 months' credit for the time he served in juvenile detention.[13] We stated:

> Although the reimposed sentence may, on its face, appear to be an increase over the term originally imposed, the appearance is one of form rather than of substance: the full eight-month misdemeanor term has already been served by Coates, as indeed, it had been at the time of the original sentencing hearing.
>
> Nor was the sentencing court precluded by double jeopardy considerations from rectifying its original mistake with respect to credit for time served by reinstating the initially suspended eight-month misdemeanor term. Because the court's original sentencing intent and its error with respect to the applicability of credit for time served are both apparent on the contemporaneous record of the original sentencing hearing, the imposition of a nominally more severe sentence is not precluded by double jeopardy.

*Coates,* 721 P.2d at 658.

Another similar situation was presented in *DeMario v. State,* 933 P.2d 558 (Alaska App. 1997). DeMario was being sentenced for a probation violation. DeMario asked the judge to impose all of his remaining jail time so that his probation would end, and the record of the revocation hearing "unequivocally reveal[ed]" that the sentencing judge "intended to [grant DeMario's request and] impose all previously suspended [jail time] that remained outstanding against DeMario".[14] Even though DeMario correctly calculated that he had more than 1 year of remaining jail time, the prosecutor mistakenly informed the judge that DeMario had only 227 days of suspended jail time. Relying on the prosecutor's mistaken calculation, the judge declared that she was sentencing DeMario to 227 days.[15]

Later, the judge realized that she had overlooked several months of suspended jail time. She therefore modified the judgement, increasing the original 227 day sentence by adding these omitted months. On appeal, we upheld the sentencing judge's action:

> The contemporaneous record of the original probation revocation hearing ... reveals that Magistrate Andree intended to grant DeMario's request and impose all of his remaining jail time[,] and that the 227–day sentence Magistrate Andree imposed reflected a miscalculation of DeMario's then—suspended incarceration. Since this is unquestionably "an objectively ascertainable mistake," ... the [written judgement] was subject to subsequent correction under [Alaska Criminal] Rule 36 without violence to the double jeopardy prohibition.

*Id.* at 561–62.

Finally, we note that the Alaska Supreme Court has followed the same rule, ignoring a sentencing judge's precise words in order to implement the judge's unambiguous intent. In *Cochran v. State,* 586 P.2d 175 (Alaska 1978), the defendant was convicted of two crimes: forgery and uttering a check with insufficient funds. The sentencing judge imposed a normal sentence for the forgery (*i.e.,* a term of imprisonment with a portion of it suspended), then gave the defendant a suspended imposition of sentence (SIS) on the check charge. The judge declared that the defendant would be on probation for 5 years on the forgery charge, and that the defendant's SIS probation "[was] to run consecutive to the [forgery sentence]."[16]

The problem with this sentence (as worded) is that, under Alaska law, SIS probation must begin on the day that sentence is imposed. The sentencing judge simply could not make the SIS probation consecutive to the forgery sentence, nor could the sentencing judge otherwise "cause that period [of probation] to begin several years in the future."[17]

Nevertheless, the supreme court concluded (from the judge's contemporaneous sentencing remarks) that the judge's unambiguous intention was to place the defendant on pro-

---

13. *See id.*

14. *Id.* at 561.

15. *See id.*

16. *Id.* at 176.

17. *Id.*

bation for eleven years following the defendant's release from prison. To implement the sentencing judge's intention (as nearly as possible), the supreme court ignored the fact that the judge had described Cochran's SIS probation as lasting 5 years; instead, the supreme court declared that the judge's sentencing remarks would be construed as imposing an SIS probation of 10 years (the maximum term of probation allowed for Cochran's offense).[18] Cochran's sentence had to be construed in this fashion, the supreme court declared, because this construction of the sentence was the way to most nearly achieve the sentencing judge's intent.[19]

Based on our analysis of the contemporaneous sentencing record in Alvin's case, and based on the decisions in these prior cases, we conclude that Judge Card acted properly when he denied Alvin's request to modify the written judgement. That written judgement accurately embodies Judge Card's unambiguous original sentencing intent.

### Conclusion

The judgement of the superior court is AFFIRMED.

---

**18.** *See id.* at 177–78.

**19.** *See id.*