**John P. SMITH, II, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9681.

Court of Appeals of Alaska.

July 3, 2008.

Shelley K. Chaffin, Anchorage, for the Appellant.

Richard K. Payne, Assistant District Attorney, and Roman J. Kalytiak, District Attorney, Palmer, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

John P. Smith II appeals the 20–year composite sentence that he received for a dozen criminal offenses (ten felonies and two misde-

meanors), most of them committed during a two-month period in the summer of 2004. Smith's appeal raises two issues. First, does he have the right to appeal his composite sentence? And second, if he does, is the 20–year composite term of imprisonment excessive?

### Does Smith have the right to appeal his sentences?

■ Smith's twelve criminal convictions are contained in eight separate judgements. The State contends that, under Alaska law, the superior court was required to impose the sentences in each of these eight judgements consecutively—and that, because the superior court was required to impose consecutive sentences for almost all of Smith's offenses, Smith has no right to appeal these sentences.

#### (A) Summary of the State's argument

The State's argument is based on AS 12.55.127 (the statute that governs the imposition of consecutive and concurrent sentences) and AS 12.55.120 (the statute that defines the right to appeal a criminal sentence on the ground that it is excessive).

During the 2004 legislative session, the Alaska Legislature amended the law governing a court's power to impose consecutive and concurrent sentences. The legislature repealed the earlier statutory provisions governing this area of law—former AS 12.55.025(e), (g), and (h)—and, in their place, the legislature enacted AS 12.55.127.[1]

Subsection (a) of AS 12.55.127 declares that "[i]f a defendant is required to serve a term of imprisonment under a separate judgment, [then any] term of imprisonment imposed in a later judgment, amended judgment, or probation revocation shall be consecutive."

Subsection (b) of the statute declares that "if a defendant is being sentenced for two or more crimes in a single judgment, [the]

terms of imprisonment may be concurrent or partially concurrent", except as provided in subsection (c).

Subsection (c) of the statute lists several instances where a sentencing court is required to impose either wholly or partially consecutive sentences for particular crimes.

This new statute took effect on July 1, 2004—approximately two weeks before Smith commenced his criminal rampage.[2] Thus, AS 12.55.127 governed Smith's sentencing.

Nine months later (in March 2005), the legislature amended AS 12.55.120, the statute that governs a criminal defendant's right to pursue a sentence appeal. The legislature added a new subsection that eliminates a defendant's right of sentence appeal in two situations: (1) when the defendant's sentence is "within [the] applicable presumptive range set out in AS 12.55.125" for that offense, and (2) when the defendant's sentence is "a consecutive or partially consecutive sentence imposed in accordance with the minimum sentences set out in AS 12.55.127".[3] This subsection is currently codified as AS 12.55.120(e).

Based on the combination of these two statutes—AS 12.55.127(a) and AS 12.55.120(e)—the State argues that Smith has no right to appeal 18 years of his 20–year composite sentence.

The two statutes, read in conjunction, clearly forbid Smith from appealing any of his individual sentences—since each of these sentences was within the prescribed presumptive range for a first felony offender convicted of those offenses. But Smith does not challenge any of his individual sentences; rather, he challenges his 20–year composite term of imprisonment.

To support its contention that Smith has no right to appeal the great majority of his composite term of imprisonment, the State relies on the provision of AS 12.55.120(e) that precludes sentence appeals of "a consecutive

---

1. See SLA 2004, ch. 125, §§ 2, 7 (repealing the former provisions) and § 3 (enacting the new statute).

2. See SLA 2004, ch. 125, § 8.

3. This new restriction on sentence appeals was enacted by SLA 2005, ch. 2, § 7. Pursuant to § 33 of that same session law, the restriction took effect on March 23, 2005.

or partially consecutive sentence imposed in accordance with the minimum sentences set out in AS 12.55.127". The State argues that this provision bars Smith from appealing 18 years of his composite term—because, according to the State, subsection (a) of AS 12.55.127 required the superior court to impose all but two years of Smith's various sentences consecutively.

To evaluate the State's claim, we must review the law governing consecutive sentences as it existed before the enactment of AS 12.55.127 in 2004, and then we must assess what changes the legislature made when it repealed this former law and enacted AS 12.55.127.

### (B) The pre–2004 law governing consecutive sentencing

As explained above, the law that governed consecutive sentencing before 2004 was contained in three now-repealed subsections of AS 12.55.025—subsections (e), (g), and (h).

Subsection (e) stated two rules. First, defendants being sentenced for two or more crimes had to receive consecutive sentences except in the circumstances described in subsection (g). Second, consecutive sentencing was required for defendants who were sentenced for a crime when they were already imprisoned because of a previous criminal judgement.

Subsection (g) listed six circumstances in which concurrent sentencing was allowed. And subsection (h), in turn, contained a limited exception to subsection (g)—i.e., it required consecutive sentencing in certain instances even though the defendant would otherwise qualify for concurrent sentencing under subsection (g).

Here is the exact wording of former AS 12.55.025(e):

Except as provided in (g) and (h) of this section, if the defendant has been convicted of two or more crimes, sentences of imprisonment shall run consecutively. If the defendant is imprisoned upon a previous judgment of conviction for a crime, the judgment shall provide that the imprison-ment commences at the expiration of the term imposed by the previous judgment.

Subsection (g) declared:

If the defendant has been convicted of two or more crimes before the judgment on either has been entered, any sentence of imprisonment may run concurrently if . . . [there followed six circumstances in which concurrent sentences were authorized].

And subsection (h) declared:

If [a] defendant has been convicted of two or more crimes under AS 11.41.200–11.41.250 or 11.41.410–11.41.458 in which the victim or victims of the crimes were minors[,] and [if] the judgment on any of the convictions has not been [previously] entered, the court shall impose some consecutive period of imprisonment for each conviction.

As just explained, subsection (g) of the statute contained six categories of cases in which concurrent sentencing was allowed. In *State v. Andrews,* 707 P.2d 900, 905–06, 908 (Alaska App.1985), this Court interpreted these six categories as broad enough to permit concurrent sentencing in almost every instance where a defendant was simultaneously sentenced for two or more crimes. And, based on this interpretation of subsection (g), this Court then interpreted the combination of AS 12.55.025(e) and (g) as merely expressing a preference for, rather than requiring, consecutive sentences for defendants who were being sentenced for two or more crimes. *Andrews,* 707 P.2d at 910.

(The Alaska Supreme Court affirmed this Court's interpretation of these statutes in *State v. Andrews,* 723 P.2d 85 (Alaska 1986).)

The wording of subsection (e) posed one other significant question of interpretation.

As noted above, the second sentence of subsection (e) required consecutive sentences whenever a judgement was entered against a defendant who was already "imprisoned upon a previous judgment of conviction for a crime". In *Wells v. State,* 706 P.2d 711 (Alaska App.1985), this Court was asked to construe how this provision of subsection (e) applied to a defendant who, while awaiting

sentencing in a Palmer case, was sentenced in an unrelated Anchorage case.

The State argued in *Wells* that, because the defendant was already "imprisoned upon a previous judgment" (*i.e.*, the judgement from his Anchorage conviction) by the time the superior court held the sentencing hearing in the defendant's Palmer case, the court was obliged to impose a consecutive sentence for the defendant's Palmer crime. *Wells*, 706 P.2d at 713. This Court rejected the State's argument and interpreted subsection (e) as requiring consecutive sentences only when the defendant's second crime was *committed* after judgement was entered against the defendant for the earlier crime. We explained that the State's interpretation of the statute led to irrational and unjustified disparity in sentencing:

> [T]he second sentence of AS 12.55.025(e) ... requires imposition of a consecutive sentence "[i]f the defendant is imprisoned upon a *previous judgment* of conviction for a crime." ... The state's interpretation of subsection (e) assumes that "previous judgment" means any judgment entered before the entry of judgment in the current case. While this interpretation may seem plausible at first blush, it is on closer examination problematical.
>
> To interpret subsection (e) in the manner proposed by the state would lead to irrational results: a defendant charged with and convicted of two or more separate crimes in a single indictment would be subject to concurrent sentencing. The same would hold true for a defendant charged with separate crimes in separate indictments if that defendant made arrangements for sentencing proceedings on the charges to be consolidated. Yet, for a defendant who did not have the foresight to arrange consolidated sentencing proceedings[,] or for whom consolidated proceedings were not possible due to scheduling problems or other procedural difficulties, imposition of consecutive sentences would be mandatory if the state's interpretation were adopted.
>
> We cannot conceive why the legislature might have intended the application of mandatory consecutive sentencing to turn on such fortuitous and haphazard considerations. The present case provides an excellent illustration. Here, Wells' Anchorage counsel was apparently unaware of the pending Palmer charges when Wells pled no contest and was sentenced for the Anchorage offense; consequently, no effort was made to obtain consolidated sentencing hearings. Although the state concedes that, under its proposed interpretation, a routine request for consolidated sentencing hearings would have sufficed to avoid a mandatory consecutive sentence, it maintains that in the absence of such a request a consecutive sentence was required. The state insists that, even if it does not particularly make sense, this is apparently the manner in which the legislature intended AS 12.55.025(e) to be construed. Yet we believe that the irrationality of this result only serves to underscore the ambiguity in the statutory language.

*Wells*, 706 P.2d at 714. We therefore held that the phrase "imprisoned upon a previous judgment of conviction" referred only to defendants who committed a new crime after the entry of judgement for a prior crime. *Id.* at 715.

Thus, following this Court's decision in *Wells*, consecutive sentencing was required by former AS 12.55.125(e) only if a defendant committed a new crime while on parole from a previous crime,[4] or committed a new crime while on probation from a previous crime,[5] or committed a new crime in prison while serving a sentence for a previous crime.[6]

> (C) *The wording of AS 12.55.127, and the State's interpretation of how this statute applies to Smith's case*

As explained above, the legislature repealed AS 12.55.025(e), (g), and (h) in 2004.

---

**4.** *See Sanders v. State,* 718 P.2d 167, 168 (Alaska App.1986).

**5.** *See Jackson v. State,* 31 P.3d 105, 107–08 (Alaska App.2001); *Griffin v. State,* 9 P.3d 301, 308 (Alaska App.2000).

**6.** *See Jennings v. State,* 713 P.2d 1222, 1223 (Alaska App.1986).

In their place, the legislature enacted AS 12.55.127. Subsections (a), (b), and (c) of AS 12.55.127 now codify the rules that govern consecutive sentencing.

Subsection (a) of the statute requires a court to impose consecutive sentences whenever a defendant is sentenced to serve a term of imprisonment "under a separate judgment" and then receives another term of imprisonment under "a later judgment, amended judgment, or probation revocation".

Subsection (b) allows a court to impose concurrent or partially concurrent sentences when a defendant "is being sentenced for two or more crimes in a single judgment".

Subsection (c) completes the trilogy by setting forth a list of exceptions to the concurrent sentencing allowed by subsection (b). That is, subsection (c) lists several instances where a sentencing court is required to impose either wholly or partially consecutive sentences for particular crimes, even though the defendant would otherwise qualify for concurrent sentencing under subsection (b) (because the defendant is being sentenced for two or more crimes in a single judgement).

In the present case, the superior court sentenced Smith for twelve crimes at two sentencing hearings. These twelve charges were contained in six different criminal cases. However, rather than issuing six judgements against Smith (one for each criminal case), the superior court issued eight separate judgements. For some reason not disclosed in the record, the superior court chose to issue an additional, separate judgement for each of Smith's two misdemeanor convictions—the conviction for driving under the influence in case number 3PA–04–2986 Cr, and the conviction for violation of the conditions of felony release in case number 3PA–05–2842 Cr.

The State argues that because Smith's sentences were imposed in separate judgements, the superior court was obliged by AS 12.55.127(a) to impose the sentences contained in each of these judgements consecutively to each other—and, thus, Smith is effectively barred from appealing his 20–year composite sentence.

(Under the State's interpretation of the statute, Smith would still be able to appeal the superior court's decision to impose consecutive sentences for offenses contained within any individual judgement. Thus, in case number 3PA–04–2791 Cr, where Smith was sentenced to 8 years' imprisonment for first-degree robbery and a consecutive 1 year for first-degree vehicle theft, Smith would be able to appeal the superior court's decision to impose the consecutive year for the vehicle theft. Likewise, in the felony judgement in case number 3PA–05–2842 Cr, where Smith was sentenced to 2 years' imprisonment for first-degree burglary and a consecutive 1 year for second-degree theft, Smith would be able to appeal the superior court's decision to impose the consecutive year for the second-degree theft.)

One underlying problem with the State's proposed interpretation of AS 12.55.127(a) is that it does not comport with the wording of the statute.

The State takes the position that subsection (a) requires consecutive sentencing whenever a defendant receives a term of imprisonment in a separate judgement. But this is not exactly what subsection (a) says. Rather, subsection (a) declares that consecutive sentencing is required when "a defendant [who] is required to serve a term of imprisonment under a separate judgment" receives "a term of imprisonment ... in a *later* judgment, amended judgment, or probation revocation".

For the reasons we explain in this opinion, we conclude that the phrase "later judgment [or] amended judgment" refers to a judgement based on a crime that was *committed after* the court entered judgement for the defendant's "separate" crime. In other words, this statutory language was intended to re-enact Alaska's pre-existing consecutive sentencing rule, as interpreted by this Court in *Wells*.

In order to explain our conclusion, we must set forth the legislative history of AS 12.55.127 in some detail.

### (D) The legislative history of AS 12.55.127

The wording of AS 12.55.127(a) poses some obvious difficulties. For instance, the statute

appears to require a consecutive term of imprisonment whenever the sentencing court issues a "later ... amended judgment". But many amended judgements are issued to fix a clerical error or to otherwise conform the judgement to what the sentencing judge said at the sentencing hearing. They are meant to correct and supersede the originally issued judgement. In such instances, it would be nonsensical to require the term of imprisonment specified in the amended judgement to be served consecutively to the term of imprisonment specified in the original judgement.

Another problem is that the number of judgements entered against a defendant sometimes bears little or no relationship to the number of criminal episodes that the defendant has engaged in. This problem is illustrated by the actions of the superior court in Smith's case. As explained above, two of Smith's six criminal cases involved a combination of felony and misdemeanor charges. The superior court segregated the two misdemeanor counts and issued separate judgements on those misdemeanor convictions—thus increasing the total number of separate judgements to eight.

Under the State's proposed interpretation of the statute, because the superior court decided to issue separate judgements for these misdemeanor convictions, the superior court was apparently required to impose the misdemeanor sentences consecutively—and, thus, Smith would have no right to appeal the fact that these sentences are consecutive to his other sentences. But we seriously doubt that the Alaska Legislature intended to allow sentencing judges to adopt the tactic of issu-

ing a separate judgement for each of a defendant's criminal convictions as a means of precluding the defendant from appealing the judge's decision to impose the sentences consecutively.

What, then, did the legislature mean when it declared that, if a defendant receives a term of imprisonment "under a separate judgment", any term of imprisonment "imposed in a later judgment, amended judgment, or probation revocation shall be consecutive"? We turn to the legislative history of AS 12.55.127 to answer this question.

AS 12.55.127 began life as one section of a lengthy "omnibus" criminal law bill introduced by the governor in 2003. (Actually, the governor introduced twin bills: House Bill 244 (23rd Legislature) and Senate Bill 170 (23rd Legislature).)

As reflected by the minutes of several legislative committee meetings during 2003 and 2004, the governor's omnibus criminal law bill encountered substantial resistance in the legislature. The bill contained so many controversial provisions that it drew active opposition from a wide range of legislators and citizens.[7]

By the end of the 23rd Legislature (*i.e.*, the spring of 2004), it seemed clear that neither House Bill 244 nor its sibling, Senate Bill 170, would pass. So on May 11, 2004 (*i.e.*, shortly before the end of the legislative session), the provision on consecutive sentencing was inserted into another bill—the Senate Resources Committee's Substitute for the House Committee Substitute for House Bill 309. (Or, in the jargon of courts and legislators, "SCS HCS HB 309(Res)".)

---

**7.** See, for example, the minutes of the House Judiciary Committee for April 14, May 8, and May 9, 2003. At these three committee hearings, members of the bar, other citizens, and several committee members expressed hesitance concerning, or outright opposition to, various provisions of the bill. The portions of the bill that drew the most opposition were: (1) provisions that would have altered the burden of proof on the defenses of self-defense, heat of passion, and defense of others, so that a criminal defendant would have to prove these defenses by a preponderance of the evidence; (2) a provision that would have restricted the right of a person to claim self-defense if the person came armed to a confrontation; (3) a provision that would have

restricted the ability of a spouse, parent, or family member of an arrestee to hire an attorney to consult with the arrestee before or during any police interrogation, if the arrestee had not personally asked for the assistance of an attorney; (4) a provision that would have required a prosecutor to be present whenever a witness in a criminal case claimed the privilege against self-incrimination and wished to explain the basis of that claim of privilege to a judge *in camera;* and (5) a provision that would have prohibited the bifurcation of felony DUI trials, so that a jury would learn of the defendant's prior convictions before the jury decided whether the defendant was guilty of driving under the influence on the occasion in question.

Until that time, the sole purpose of House Bill 309 had been the enactment of a new provision in Title 16 (the laws relating to fish and game) to prohibit the introduction of "live nonindigenous fish [or the live fertilized eggs of such fish] into a body of fresh public water" in this state. But by virtue of the May 11th amendment, House Bill 309 was retitled "An Act relating to nonindigenous fish and consecutive sentencing", and the text of what is now AS 12.55.127 was inserted into the bill as section 3. In this revised form, House Bill 309 was enacted as SLA 2004, ch. 125.

(We express no opinion on whether the legislature's action violated the "single-subject" rule contained in Article II, Section 13 of the Alaska Constitution.)

There are no committee minutes discussing House Bill 309 in its post-May 11th revised form. Therefore, to discern how the legislature understood the provision on consecutive and concurrent sentencing, we must turn back to the committee minutes from 2003 and 2004 dealing with House Bill 244.

At a meeting of the House Judiciary Committee on April 14, 2003, Anchorage Chief Assistant District Attorney John Novak told the committee members that the provisions of House Bill 244 dealing with consecutive sentencing were designed to achieve a limited purpose: to require sentencing judges to impose a defendant's *mandatory minimum sentences* consecutively.

Mr. Novak told the Committee that when the legislature enacted the prior provisions dealing with consecutive sentencing (*i.e.,* when the legislature enacted former AS 12.55.025(e), (g), and (h)), "the legislature [acted] with the clear intent of wanting consecutive sentences [to be mandatory]." However, according to Novak, "th[at earlier] legislation was not well drafted and, thus, the [appellate] court[s] interpreted the legislation to mean that consecutive sentencing was simply a legislative preference, not mandatory."[8]

(Mr. Novak was referring to *State v. Andrews,* 707 P.2d 900 (Alaska App.1985), *affirmed* 723 P.2d 85 (Alaska 1986), which held that former AS 12.55.025(e) and (g) expressed a preference for, but did not require, consecutive sentences when a defendant was sentenced for two or more crimes at the same time.)

Novak then told the Committee that the consecutive sentencing provisions of House Bill 244 were *not* intended "to take the law back to what was intended with the 1982 legislation"—*i.e.,* not intended to require complete consecutive sentencing for all crimes involving separate victims. Rather, Novak told the Committee that the provisions of House Bill 244 would only "require [that] mandatory minimum sentences ... be consecutive."[9] Novak then gave this example:

[If a] drunk driver [killed two adults and injured their child, and if the driver] was convicted of murder in the second degree [for killing the two adults], he or she would have to serve 10 years [*i.e.,* the mandatory minimum sentence for second-degree murder] for each of the adults killed, and [the driver would have to serve] at least 1 [consecutive] day for the crime of assaulting the child, for a total of 20 years and 1 day.

Minutes of the House Judiciary Committee for April 14, 2003, Tape 03–38, Side B, Log Nos. 2226 to 1958. (Apparently, on the legislature's tape machines, the log numbers run backwards on side B of a tape.)

The House Judiciary Committee held House Bill 244 under consideration for several weeks. On May 9, 2003, Chief Assistant Attorney General Dean J. Guaneli (of the Criminal Division Central Office) appeared before the Committee to respond to questions about the bill.

In response to questions from Representative Les Gara about the consecutive sentencing provisions of the bill, Mr. Guaneli told the Committee that House Bill 244 required con-

---

**8.** Minutes of the House Judiciary Committee for April 14, 2003, Tape 03–38, Side B.

**9.** Minutes of the House Judiciary Committee for April 14, 2003, Tape 03–38, Side B, Log Nos. 2226 to 1958.

secutive sentencing in very limited circumstances:

> What this provision does—[let me] first explain about [the] current law. In 1982, the legislature adopted the current consecutive sentencing statutes. And if you read them, they do appear to say [that] just about everything is consecutive.
>
> But ... there was a problem in drafting, and the Alaska appellate courts have said, "That isn't what it says. It may be what was intended, and we recognize that the legislature prefers there to be consecutive sentencing, but [mandatory consecutive sentencing] isn't the law." So what [House Bill 244] does is, it tries to address two kinds of crimes for mandatory consecutive sentencing: homicides and rapes, or first-degree sexual abuse of a minor—in other words, [sexual] penetration of a minor under 13. [Sentencing for] everything else is essentially at the judge's discretion. [Thus, for] the particular crime that Representative Gara talked about, ... first-degree assault, ... there is no provision for mandatory consecutive sentencing under this bill.

Minutes of the House Judiciary Committee for May 9, 2003, Tape 03–58, Side B, Log Nos. 2320–2219.

Mr. Guaneli then added that House Bill 244 did also require "some active term of imprisonment of each additional crime ... under AS 11.41.200-[250]"—*i.e.*, the various degrees of assault—"[because a] judge really ought to recognize that there were separate victims and impose some additional time. [But the new statute] doesn't say how much [time to impose]; it can be [as little as] one day."[10]

Guaneli characterized the bill as "impos[ing] some type of consecutive sentencing,

but it's really fairly modest. . . . This really is a fairly modest provision."[11]

Mr. Novak's and Mr. Guaneli's explanations of the consecutive sentencing provisions were offered to the legislature in 2003. As explained above, House Bill 244 contained so many controversial provisions that it ran into considerable trouble in the legislature that year. In response to legislative criticism and concerns, the Department of Law brought back a revised proposal when the 23rd Legislature reconvened in 2004.

In the spring of 2004, the Department of Law sent a third representative, Deputy Attorney General Susan A. Parkes, to introduce the revised bill to the legislature. In appearances before the House Judiciary Committee on March 19th[12] and before the House Finance Committee on April 21st,[13] Ms. Parkes explained that the provisions of the bill relating to consecutive sentencing were identical to those contained in the previous year's version. According to Parkes, the only significant change from the then-current law would be that consecutive sentencing—either total or partial—would be mandated for the most serious crimes.[14]

Parkes's most lengthy and substantive discussion of the consecutive sentencing provisions occurred in front of the House Judiciary Committee on March 30, 2004.[15] Parkes told the Committee that the proposed provisions on consecutive sentencing did not mandate or even establish a presumption that all sentences should be consecutive.[16] This prompted Representative Les Gara to ask Parkes, "So are you saying that [these proposed] statutes provide that in some cases the presumption is *not* consecutive sentences?" (Emphasis added)[17]

---

10. Minutes of the House Judiciary Committee for May 9, 2003, Tape 03–58, Side B, Log Nos. 2320–2219.

11. *Id.* at Log Nos. 2219–2132.

12. Minutes of the House Judiciary Committee for March 19, 2004, Tape 04–42, Side B, Log Nos. 1748–1514.

13. Minutes of the House Finance Committee for April 21, 2004, Tape HFC 04–92, Side B.

14. See footnotes 12 and 13.

15. Minutes of the House Judiciary Committee for March 30, 2004, Tape 04–53, Side A, Log No. 1266.

16. *Id.* at Log Nos. 1266–1359.

17. *Id.* at Log No. 1359.

In response to Representative Gara's question, Parkes replied that the proposed new statute would carry forward the then-current rule codified in AS 12.55.025(e) and (g). In other words, Parkes told the Committee that, except for the most serious crimes, concurrent sentencing would still be allowed under the terms of former AS 12.55.025(g)—whenever "the defendant has been convicted of two or more crimes before the judgment on either has been entered".[18]

Parkes then added a comment that suggested a limited *expansion* of concurrent sentencing. As explained above, former AS 12.55.025(e) and (g) had been interpreted to allow concurrent sentencing, but to create a preference for consecutive sentencing. But Parkes told the House Judiciary Committee that, under the proposed new law, "it's [just an] opportunity [for consecutive sentencing] rather than a presumption." [19]

### (E) Why we reject the State's interpretation of AS 12.55.127

As can be seen from the foregoing legislative history of AS 12.55.127, the Department of Law consistently took the position that this statute would work only a modest change in Alaska law governing consecutive and concurrent sentencing. Indeed, the changes described by the Department of Law's representatives do not appear to involve AS 12.55.127(a) and (b) at all. Rather, the changes that the Department described are seemingly all contained in subsection (c) of the statute—the portion of the statute that sets forth a list of rules for when a defendant must receive at least partially consecutive sentences for various types of crimes.

During the many legislative hearings on this proposed statute, no one stated or even suggested that subsections (a) and (b)—the portions of the statute at issue in the present case—would work a change in the law (with the exception of the one remark made by Deputy Attorney General Parkes to the House Judiciary Committee, suggesting that these two subsections would eliminate the then-existing preference for consecutive sentencing). Rather, as we have described

above, the Department of Law consistently took the position that subsections (a) and (b) merely carried forward existing law—that is, they allowed concurrent sentencing, with the exception of the consecutive sentencing mandated by subsection (c).

We acknowledge that this conclusion is not self-evident from the wording of AS 12.55.127(a) and (b). The language of these two subsections does not mimic the language of former AS 12.55.025(e) and (g). But the State's suggested reading of subsection (a)—*i.e.*, its argument that subsection (a) requires consecutive sentencing whenever sentences of imprisonment are imposed in separate judgements—does not comport with the wording of the subsection, and it is inconsistent with the legislative history we have just set forth.

That legislative history—the sum of the discussions and descriptions of AS 12.55.127 found in the various legislative committee hearings of 2003 and 2004—demonstrates that subsections (a) and (b) of the statute were intended by the Department of Law, and understood by the Alaska Legislature, to basically restate the consecutive sentencing rules codified in the earlier law, AS 12.55.025(e) and (g), as interpreted by the decisions of this Court and the Alaska Supreme Court.

For these reasons, we conclude that the State is mistaken when it asserts that subsection (a) mandates consecutive sentencing whenever a defendant's sentences are contained in separate judgements. Instead, with the exception of the consecutive sentencing mandated by subsection (c) of the statute, subsections (a) and (b) were meant to carry forward the pre-existing rule that consecutive sentences are required in only one category of cases: instances where a defendant is sentenced for a crime that the defendant *committed* after judgement was issued against the defendant for an earlier crime. In those instances, the sentence for the new crime must be consecutive to the defendant's sentence for the earlier crime—including any amended sentence that the defendant might

---

**18.** *Id.* at Log Nos. 1359–1529.

**19.** *Id.*

receive if the court revoked the defendant's probation from the earlier crime.

Our conclusion on this point is bolstered by the fact that, if we interpreted AS 12.55.127(a) and (b) as the State suggests—in other words, if consecutive sentencing were mandated whenever a court issued a defendant's sentences in separate judgements—this would give rise to the same potential for irrational sentencing that this Court identified in *Wells v. State*, when we adopted a limiting construction of former AS 12.55.025(e).[20]

If AS 12.55.127 were interpreted to require consecutive terms of imprisonment whenever the sentencing court issued separate judgements, a sentencing court's authority to impose concurrent sentences for two or more crimes would hinge in large measure on the prosecutor's initial charging decision. If the prosecutor chose to join the crimes in a single indictment, concurrent sentences would be allowed (in the sentencing judge's discretion). But if the prosecutor chose to pursue these same crimes in separate criminal cases, concurrent sentences would be prohibited.

By the same token, even when a defendant's crimes were joined in the same indictment, the sentencing judge could effectively require consecutive sentences—and insulate those sentences from later attack—by dividing up the charges and issuing separate judgements for each conviction.

But neither a prosecutor's decision to join different crimes in the same indictment, nor a sentencing judge's decision to issue separate judgements on different counts of the same indictment, appears to have any rational bearing on the question of whether a defendant should receive consecutive or concurrent sentences for multiple crimes. What we said in *Wells,* when we rejected a literal reading of former AS 12.55.025(e), applies equally to the conundrums posed by the State's proposed reading of AS 12.55.127(a) and (b): "We cannot conceive why the legislature might have intended the application of mandatory consecutive sentencing to turn on such fortuitous and haphazard considerations." 706 P.2d at 714.

Accordingly, we conclude that AS 12.55.127 did not require the superior court to impose Smith's sentences consecutively (either in whole or part). Rather, the superior court was authorized to impose concurrent sentences in Smith's case-and, as a consequence, Smith is entitled to appeal his composite term of imprisonment.

*Whether Smith's 20–year composite sentence is excessive*

■ Now that we have concluded that Smith is entitled to appeal his composite sentence, we turn to the remaining issue in this case: whether that sentence is excessive. To explain our answer to this question, we must first describe Smith's series of criminal offenses.

As we explain in more detail below, Smith committed a series of criminal acts during the summer of 2004. As a result, the State filed five different criminal cases against Smith, comprising twenty-six different offenses. These five cases were ultimately resolved by an omnibus plea agreement.

However, before Smith and the State reached this omnibus plea agreement, while Smith was in jail awaiting trial on these five cases, Smith asked the superior court to release him for one day to attend his father's funeral. The superior court granted this request and released Smith to his mother's custody. Smith then absconded—and committed more offenses (burglary, theft, and criminal mischief). This led to the filing of a sixth criminal case against Smith. This sixth case was resolved in a separate plea agreement.

*(A) The details of Smith's criminal conduct in these six cases*

On July 18, 2004, eighteen-year-old John P. Smith II was expelled from the military academy he had been attending. He then stole a pickup truck belonging to the Municipality of Anchorage. Accompanied by a friend, Smith drove the truck to Jim Creek (southeast of Palmer) and went "four-wheel-

---

**20.** 706 P.2d at 714.

ing". This activity caused $5000 of damage to the pickup truck. Smith and his friend, both of whom had been drinking, then stole another pickup truck. Smith drove this second pickup truck at speeds of over 90 miles per hour. Although Smith's friend urged him to "stop driving crazy", Smith did not heed this warning. Ultimately, the truck hit an embankment, became airborne, struck a utility pole (which split in half), and then landed on its roof and caught fire.

A witness summoned emergency personnel. When the paramedics arrived, they were initially unable to free Smith from the wreckage. While they were collecting additional rescue equipment, Smith managed to free himself. He crawled to a nearby ambulance, got in, and attempted to drive away. But as Smith tried to maneuver the ambulance, he got the cab of the ambulance entangled in a low-hanging power line—which brought the ambulance to a halt. Emergency personnel then removed Smith from the driver's seat, strapped him to a gurney, and took him to the hospital—where he required surgery for a ruptured spleen.

As noted above, the damage to the municipal pickup truck was $5000. The damage to the second pickup truck was $10,000 (a total loss). In addition, Smith caused $1000 of damage to the ambulance and $6000 of damage to the utility pole and its accompanying electrical transformer.

Based on these events, Smith was charged with two counts of first-degree vehicle theft, three counts of second-degree criminal mischief, and driving under the influence in case number 3PA–04–2986 Cr.

As part of the omnibus plea agreement that resolved the first five of Smith's criminal cases, Smith pleaded no contest to first-degree vehicle theft, and to a reduced charge of reckless driving (in place of the driving under the influence charge); all the other charges were dismissed.

(We note that, even though the plea agreement called for Smith to be convicted of reckless driving instead of driving under the influence, the judgement issued by the superior court states that Smith was convicted of driving under the influence. Smith does not complain of this discrepancy on appeal. If the superior court in fact made a mistake, Smith can seek relief in the superior court under Alaska Criminal Rule 35(a).[21])

On August 24, 2004 (*i.e.*, roughly five weeks after this first criminal episode), a woman called the Alaska State Troopers to report that her home had been ransacked and her vehicle stolen. Subsequent investigation revealed that Smith had been walking down a power line trail and had stopped at the woman's house to get a drink of water from an outside hose. Smith then decided to break into the residence. Once inside, Smith rummaged through a file cabinet and some desk drawers, where he found $150 in cash and the keys to a pickup truck—all of which he took. Smith later abandoned the stolen truck at an apartment complex.

Based on these events, Smith was charged with first-degree burglary, first-degree vehicle theft, third-degree theft, and fifth-degree criminal mischief in case number 3PA–05–. 410 Cr.

Under the terms of Smith's omnibus plea agreement with the State, Smith pleaded no contest to first-degree burglary, and the other charges were dismissed.

On August 25, 2004 (*i.e.*, the day following Smith's commission of the just-described burglary and vehicle theft), another woman called the state troopers to report that her vehicle had been stolen from her residence. Later that evening, the Anchorage police were summoned to the scene of a single-vehicle accident near Eagle River. When they arrived, they found the woman's stolen vehicle in a ditch. Inside the vehicle were eight firearms, as well as burglary tools and flashlights.

Subsequent investigation revealed that Smith (accompanied by some other youths) had been driving the car. The car went into the ditch when Smith fell asleep behind the wheel. After the crash, witnesses saw Smith flee on foot.

Of the eight firearms found in the stolen car on the evening of August 25th, one had

**21.** *See Bishop v. Anchorage,* 685 P.2d 103, 105     (Alaska App.1984).

been reported stolen in a burglary the previous week, and four others were later reported stolen in a burglary that, according to the homeowner, occurred sometime between the morning of August 25th and August 27th.

Several weeks later, after the police arrested Smith on unrelated charges, he confessed to having committed the vehicle theft and one of these burglaries.

Based on these events, Smith was charged with first-degree burglary, first-degree vehicle theft, and four counts of second-degree theft (i.e., theft of a firearm) in case number 3PA–04–2787 Cr.

Under the terms of Smith's omnibus plea agreement with the State, Smith pleaded no contest to first-degree burglary and one count of second-degree theft; the other charges were dismissed.

On September 13, 2004, the state troopers responded to the report of an armed robbery at a home outside of Wasilla. The homeowner told the troopers that three people broke into his residence during the day and were still there when he returned home. When the homeowner entered the house, one of the three—later identified as Smith—pointed a gun at him and addressed him by name, telling him, "Freeze, Bill". The homeowner tried to close the door and hold it shut, but he ceased resisting when Smith told him, "I am going to shoot you, Bill. I have a gun."

The robbers then placed a pillow case over the homeowner's head and secured it around his neck with packing tape. They also bound his hands with packing tape and secured his feet with a belt.

The robbers stole the homeowner's ATM card, $3000 in cash, $3500 worth of jewelry, three handguns, and a video camera. Using knives, they slashed the homeowner's leather couches. They also took the homeowner's truck. This vehicle was found later that same day near Mud Lake; it had been totally destroyed by fire. Smith later told the police that he decided that he had to burn the truck because his accomplices had not worn gloves (and thus had left fingerprints in the vehicle).

Based on these events, Smith was charged with first-degree robbery, first-degree burglary, third-degree assault, first-degree vehicle theft, two counts of second-degree theft, and third-degree criminal mischief in case number 3PA–04–2791 Cr.

Under the terms of Smith's omnibus plea agreement with the State, Smith pleaded no contest to first-degree robbery, first-degree vehicle theft, and third-degree assault; all the other charges were dismissed.

A little after two o'clock in the morning of September 19, 2004, the Palmer police received a report of a vehicle on the Palmer–Wasilla Highway that was swerving all over the road, with people dangling out of the windows. The officer who was dispatched to investigate soon spotted the vehicle and made a traffic stop. There were four people in the car; Smith was the passenger in the front seat.

Smith falsely identified himself as his cousin, Jason Walker. But when "Walker" was unable to provide his social security number, and when he gave a place of birth that did not match the computer records for the real Jason Walker, the officer placed Smith in handcuffs and patted him down for weapons. In Smith's right front pocket, the officer found a plastic baggie containing several 9–mm bullets. Later, after the driver of the car gave the police permission to search the vehicle, the police found a 9–mm Witness handgun under the seat where Smith had been sitting.

The two passengers in the back seat were both minors. The minors told the police that Smith had provided them with alcoholic beverages.

Based on these events, Smith was charged with third-degree weapons misconduct, giving false information to a police officer with the intent of implicating another, and two counts of furnishing alcoholic beverages to a minor in case number 3PA–04–2788 Cr.

Under the terms of Smith's omnibus plea agreement with the State, Smith pleaded no contest to third-degree weapons misconduct, and the other charges were dismissed.

We now come to Smith's sixth criminal case—the one case that was not included in the omnibus plea bargain.

On October 13, 2005, while Smith was in jail awaiting trial on these various charges described above, the superior court granted· his request for a one-day release from custody so that he could attend his father's funeral. The following day (October 14th), Smith was released to the custody of his mother on a $100,000 unsecured bond and under electronic monitoring. The court directed Smith to return to custody by nine o'clock that evening. Approximately thirty minutes before this deadline, Smith cut off the ankle bracelet that monitored his geographic position, and he then absconded.

On October 21st, while Smith was on the run, the state troopers received a report of a residential burglary in which two handguns (a Para–Ordinance .45 and a Colt 10–mm) were stolen. That same evening, the state Fugitive Task Force (a combination of federal and state law enforcement officers) located Smith at a house in Wasilla. Smith initially refused to surrender, but negotiators finally convinced him to give himself up. Following his arrest, Smith informed the authorities where to find the two handguns that had been stolen in the burglary earlier that day.

Based on these events, Smith was charged with violating the conditions of his felony release, first-degree burglary, two counts of second-degree theft, and fourth-degree criminal mischief in case number 3PA–05–2842 Cr.

Smith ultimately reached a separate plea agreement with the State concerning these charges: he pleaded no contest to violating the conditions of his release, first-degree burglary, and one count of second-degree theft, in exchange for dismissal of the other charges and an agreed-upon sentence cap of 4 years to serve.

### (B) Smith's background before these six cases

Smith is apparently quite intelligent, but he has been in trouble with the law since early 1999, when he was twelve years old. Smith was adjudicated a delinquent minor for several thefts, trespasses, and criminal mischiefs committed in February 1999. While on probation, he committed criminal mischief again in December 1999, which was informally adjusted. He violated his juvenile probation again in March 2000, but the court continued his probation. However, Smith was institutionalized—i.e., sent to McLaughlin Youth Center—after he committed two burglaries, second-degree theft, second-degree criminal mischief, escape, and assault during the last four months of 2000.

In December 2002, the superior court entered another institutionalization order against Smith, after he committed second-degree escape.

### (C) The two sentencings

In March 2006, Smith was sentenced on the first five of his cases (i.e., all of the charges except the ones stemming from Smith's October 2005 flight from custody). (At the time of this first sentencing, the sixth criminal case had been filed, but Smith had not yet been indicted on those charges.) Smith was sentenced for his October 2005 offenses in November 2006.

The author of the pre-sentence report that was prepared for Smith's first sentencing (the March 2006 sentencing) concluded that isolation should be the superior court's primary goal in sentencing Smith—since "neither probation nor institutionalization with treatment [have been] successful" in reforming Smith or even deterring him. The pre-sentence investigator declared:

> [Smith's] calculated approach to ... criminal activity and his inclusion of others [in these activities] is ... frightening. His behavior has escalated in seriousness, [and at] this juncture, the community's safety can only be ensured [by] his lengthy incarceration.

> In 16 years of working with juveniles in a treatment setting[,] and with adults in a probation setting, this officer has never [before] held the belief that deterrence of any defendant was not possible. However, in this case[,] the defendant appears to be incorrigible. He has no regard for the safety of community members or their property. He does not do well on supervision[, and he] does not actively engage in treatment while incarcerated.

As explained above, the plea agreement that resolved Smith's first five cases required

him to plead no contest to nine different offenses—eight felonies and one misdemeanor. These were:

Case number 3PA–04–2986 Cr—first-degree vehicle theft (a class C felony) [22] and reckless driving (a non-classified misdemeanor carrying a maximum sentence of 1 year); [23]

Case number 3PA–05–410 Cr—first-degree burglary (a class B felony); [24]

Case number 3PA–04–2787 Cr—first-degree burglary (a class B felony) and second-degree theft (a class C felony); [25]

Case number 3PA–04–2791 Cr—first-degree robbery (a class A felony),[26] first-degree vehicle theft (a class C felony), and third-degree assault (a class C felony); [27] and

Case number 3PA–04–2788 Cr—third-degree weapons misconduct (a class C felony).[28]

Of Smith's nine offenses in these five cases, the most serious was the class A felony of first-degree robbery. This crime carried a maximum penalty of 20 years' imprisonment.[29] Under former AS 12.55.155(a) (the pre-March 2005 version), Smith could receive this 20–year maximum sentence because he conceded that the State could prove two of the aggravating factors listed in AS 12.55.155(c): (c)(19)—that Smith had been adjudicated a delinquent minor for conduct that would have been a felony had he been an adult; and (c)(21)—that Smith had previously repeatedly engaged in similar criminal conduct (*i.e.*, his previous thefts).

(Smith further conceded that, under the facts of his case, these two aggravating factors were *Blakely*-compliant.) [30]

Smith's next most serious offenses were the two class B felonies of first-degree burglary. These crimes carried a maximum

sentence of 10 years' imprisonment.[31] Again, Smith was eligible for this maximum penalty because of the two conceded aggravating factors.

Superior Court Judge Beverly W. Cutler was the sentencing judge in Smith's case. She had also been the judge who handled Smith's delinquency matters. As Judge Cutler noted toward the beginning of her sentencing remarks, she had been dealing with Smith since he was thirteen years old.

Based on Smith's juvenile history and his current series of crimes, Judge Cutler told Smith that it would be unrealistic "to indulge once again in the notion that, somehow, you don't really mean [to do] evil, and [that] this is just some sort of teenage acting-out behavior that you're going to change". The judge declared that Smith's behavior "[had] gone from bad to very, very much worse".

Judge Cutler acknowledged that Smith had not committed any unclassified felonies (such as a murder or a first-degree sexual assault)—although she noted that Smith's armed robbery had been "extremely serious". She then explained why she believed that only a lengthy term of imprisonment could protect the public from Smith's further criminal conduct:

*The Court:* [This] Court ha[s] already spent ... five years attempting [Smith's] rehabilitation, ... attempt[ing] it in every single imaginable way. And we indulged over and over and over again in the [views expressed by Smith's defense attorney today]—that, ... as a society, we would really ... prefer not to be unduly punitive, and to help people be more functional [members of society].

...

22. AS 11.46.360(c).

23. AS 28.35.400(b).

24. AS 11.46.300(b).

25. AS 11.46.130(c).

26. AS 11.41.500(b).

27. AS 11.41.220(d).

28. AS 11.61.200(i).

29. AS 12.55.125(c).

30. *See Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

31. AS 12.55.125(d).

But [our] society ... has [already] tried every conceivable method of attempting [to get Smith] to help [him]self. . . .

I don't think I will ever forget the surprise and shock, really, [that] I felt when you ... came in [to juvenile court] on your first crimes, and it was described what ... you had done in the city of Palmer[:] ... the number of businesses you broke into, the way you broke into those businesses, [and] the things you chose to do with the things you [stole].

I certainly hope ... that ... by the time you are 30[or] 35, ... you will be more cognizant of what you need to do to control your behavior, so that you can live with other people without just grabbing what you want, doing [whatever] you think ... you can get away with. . . . But I'm going to guess that you'll be 35 to 40 years old before you're really brought around.

Judge Cutler declared that Smith's criminal record was "certainly one of the worst records that this Court has [seen] that doesn't include homicide or sexual assault". And she expressed her agreement with the conclusion of the pre-sentence investigator that it would be fruitless to put Smith on probation:

*The Court:* I think that the [pre-sentence investigator] is probably quite insightful and prescient when she says [that] there is no point [in] suspending ... half of [Smith's sentences] and placing [Smith] on probation. We've been doing that for five years. There's no point in doing that anymore. . . . [I]t just doesn't seem to me to make sense to impose anything [but time to serve] here. . . . [T]hat [does not mean that] the key has been thrown away. It, rather, recognizes that the parole system is the best system, at this point in time, for determining how [Smith's] transition [to society] should go, [and] when [Smith should] finally get out of jail. . . .

Despite these pessimistic conclusions, Judge Cutler also expressly acknowledged that it was her duty to make sure that Smith's individual sentences for the nine crimes did not "add up to something [excessive]". The judge then imposed the following sentences. All of the terms of imprisonment listed here are unsuspended, and the sentences in each of the five different cases are consecutive to each other:

Case Number 3PA–04–2791: 8 years for the robbery, plus a concurrent 2 years for the accompanying assault. Judge Cutler also imposed a consecutive 1 year for the vehicle theft in this case—the vehicle theft that ended in Smith's destruction of the car by arson—because this offense was "an extremely serious vehicle theft";

Case Number 3PA–04–2986: 1 year for the vehicle theft and a consecutive 6 months for driving under the influence;

Case Number 3PA–05–410: 2 years for the burglary;

Case Number 3PA–04–2787: 2 years for the burglary, and a concurrent 1 year for the theft; and

Case Number 3PA–04–2788: 18 months for the weapons misconduct.

Judge Cutler acknowledged that these individual sentences totaled 16 years to serve. However, she asserted that this lengthy composite sentence was justified, given Smith's "huge number" of offenses.

As already explained, Smith's sentencing in case number 3PA–05–2982 Cr (the offenses Smith committed when he absconded in mid-October 2005) took place in November 2006, eight months after his first sentencing hearing.

A different probation officer prepared an updated pre-sentence report for this sentencing. This second pre-sentence investigator likewise concluded that Smith's prospects for rehabilitation were "minimal"—because Smith "has never been deterred by prior actions of the [superior court]" and because Smith "has not performed well on previous periods of juvenile probation". The pre-sentence investigator also noted that Smith had "a lengthy history of attempting to flee from [judicial] sanctions, as evidenced by [his] multiple escape convictions as a juvenile, as well as the present offense in which [Smith] used the death of his father to facilitate his escape from custody."

The pre-sentence investigator concluded that nothing would be gained from sentenc-

ing Smith to further probation supervision, and that isolation was the only *Chaney* sentencing criterion that the court should consider.[32]

As already explained, Smith's plea agreement with the State in this sixth case called for Smith to be convicted of one class B felony (first-degree burglary), one class C felony (second-degree theft), and one class A misdemeanor (violating the terms of his felony release),[33] with a sentence cap of 4 years to serve.

Smith's attorney conceded that Smith should receive 4 years to serve for these offenses, but the defense attorney asked Judge Cutler to make this 4–year term either wholly or partially concurrent to the sentences that Smith had already received in the other five cases.

Judge Cutler rejected this request for concurrent sentences. She declared that Smith was "incorrigible" and that Smith's sentences for his October 2005 offenses should be imposed consecutively to his other sentences because the October 2005 charges "represent different crimes in a [separate] crime spree".

She then sentenced Smith to 2 years for the burglary, 1 year for the theft, and 1 year for violating the conditions of his release—all consecutive to each other, and all consecutive to the sentences that Smith had received in the other five cases in March.

Thus, Smith's composite sentence (his total sentence for all twelve offenses encompassed in his six separate criminal cases) is 20 years' imprisonment.

#### (D) Why we conclude that Smith's composite sentence is not excessive

In challenging his 20–year composite sentence, Smith first argues that Judge Cutler failed to make sufficient findings to support this sentence. Specifically, Smith argues that, before Judge Cutler could properly impose a composite term longer than 10 years to serve, the judge needed to make an ex-press finding that this lengthier sentence was justified by extraordinary circumstances or weighty aggravating factors.

Smith's argument is partly based on the American Bar Association's recommendation that sentences of imprisonment should normally not exceed 10 years. The Alaska Supreme Court endorsed the ABA's suggested ceiling on felony sentences in *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974). (At that time, the suggested ceiling was 5 years' imprisonment.) And this Court issued several decisions in the 1980s endorsing the ABA's sentencing guideline (which, by then, had been increased to 10 years' imprisonment). But all of these decisions were disapproved by the Alaska Supreme Court in *State v. Bumpus*, 820 P.2d 298 (Alaska 1991), a case involving a defendant who engaged in a series of burglaries and thefts. Here is what the supreme court said:

> Citing its own decisions and this court's decision in *Pears v. State*, 698 P.2d 1198 (Alaska 1985), the court of appeals asserted [below] that "the sentencing goals of rehabilitation, deterrence, and reaffirmation of societal norms will almost invariably be satisfied by imposition of a sentence of ten years or less." [*Bumpus v. State*, 776 P.2d 329, 335 (Alaska App. 1989).] ... [T]he court [of appeals] concluded that [the sentencing] goals [of deterrence and community condemnation] could never support imposition of [the] twenty-three year aggregate term [of imprisonment imposed in Bumpus's case]. *Id.*

> The [court of appeals'] conclusion is no longer valid in the wake of this court's decision in *State v. Wentz*, 805 P.2d 962 (Alaska 1991), where we stated that dicta in *Pears* purporting to limit the circumstances under which sentences may exceed ten years could not be applied beyond the particular facts of that case. [*Wentz*, 805 P.2d] at 966 n. 5.

> *Wentz* established that it is no longer appropriate for courts to rigidly define the

---

**32.** *See State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970) (prescribing the criteria that a judge should use when assessing a criminal defendant's sentence).

**33.** AS 11.56.757(b)(1).

length of sentence that can be justified by any particular criterion, provided that the sentence is ultimately within the range allowed by the legislature.

*Bumpus,* 820 P.2d at 302 (footnote omitted).

Nine years later, in *Griffin v. State,* 9 P.3d 301, 308 (Alaska App.2000), this Court expressly acknowledged and confirmed that the supreme court's decision in *Bumpus* had abrogated the earlier 10–year sentencing guideline. Thus, Judge Cutler needed no special justification to impose a composite sentence exceeding 10 years to serve.

Next, Smith argues that Judge Cutler never found that Smith was a "worst offender" (as that term has been defined in the sentencing decisions of this Court and the Alaska Supreme Court) before she imposed a composite 20 years to serve—a sentence equal to the maximum term of imprisonment that Smith could have received for his single most serious crime, the class A felony of first-degree robbery.

Smith is apparently relying on the rule that "[g]enerally, a maximum sentence cannot be imposed without some foundation for characterizing a defendant as the worst type of offender." [34] But Smith did not receive a maximum sentence (or anything close to a maximum sentence) for any of his offenses. Indeed, the 16–year composite sentence that Smith received at his first sentencing (the one held in March 2006) for his first five criminal cases was less than the 20–year maximum that he might have received for his single most serious offense, first-degree robbery.

True, Smith was later indicted for the offenses in case number 3PA–05–2982 Cr, and he later received an additional 4 years' imprisonment in that case (at the sentencing held in November 2006). But as Judge Cutler noted at that second sentencing, Smith's crimes in this sixth criminal case—the crimes he committed after he absconded from bail release in October 2005—were completely separate from the series of crimes encompassed in his other five criminal cases.

Smith points to no decision of this Court or of the Alaska Supreme Court holding that a "worst offender" finding is required to support a defendant's combined total of imprisonment imposed at different sentencing hearings in completely unrelated cases.

Moreover, even assuming that Judge Cutler needed to make a "worst offender" finding before she sentenced Smith to the final 4 years of imprisonment at the November 2006 sentencing, this requirement was satisfied.

Although Judge Cutler may never have uttered the words "worst offender", both the Alaska Supreme Court and this Court have repeatedly stated that we will uphold a maximum sentence if the record shows that the sentencing judge implicitly made the required finding.[35] Here, as we have already noted, Judge Cutler found at Smith's first sentencing (the one held in March 2006) that Smith had not responded to five years' worth of rehabilitative efforts and that he had, instead, proceeded to commit a "huge number" of new crimes. The judge concluded that it would be fruitless to release Smith on probation again, and that Smith was unlikely to stop committing crimes until he reached early middle age. Moreover, at Smith's second sentencing (the one held in November 2006), Judge Cutler declared that Smith was "incorrigible".

These findings and conclusions add up to an implicit finding of "worst offender", if one was needed.

Smith next argues that his composite sentence violates the rule announced by this Court in *Farmer v. State,* 746 P.2d 1300 (Alaska App.1987). Under *Farmer,* a judge who is sentencing a first felony offender must have "good reason" before imposing a composite sentence that exceeds the *Austin* limit for the defendant's single most serious offense. *Id.* at 1301–02.

---

34. *Howell v. State,* 115 P.3d 587, 592–93 (Alaska App.2005), quoting *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975); *see also Hintz v. State,* 627 P.2d 207, 210 (Alaska 1981).

35. *See, e.g., Jacinth v. State,* 593 P.2d 263, 267 (Alaska 1979) ("[T]here is no requirement that the sentencing judge utter the phrase 'worst offender.'"); *Howell v. State,* 115 P.3d 587, 593 (Alaska App.2005); *Napayonak v. State,* 793 P.2d 1059, 1062 (Alaska App.1990).

(See *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), where we held that a defendant convicted of a first felony offense for which no presumptive term of imprisonment is specified should ordinarily receive a sentence more favorable than the presumptive term enacted by the legislature for a second felony offender convicted of the same offense. The *Austin* rule was later codified in former AS 12.55.125(k)(2).)

Application of *Farmer* to Smith's case is problematic because the *Austin* rule did not apply to Smith's sentencing for his most serious offense, first-degree robbery. As just explained, the *Austin* rule applied only when a first felony offender was being sentenced for a felony that did not carry a presumptive term for first felony offenders. First-degree robbery is a class A felony and, even under the pre–2005 version of Alaska's presumptive sentencing law, class A felonies carried presumptive terms for first felony offenders.

Smith appears to be arguing that we should hold, by analogy to the *Austin* rule, that Judge Cutler had to have good reason to impose a composite term that exceeded the 10–year presumptive term specified for second felony offenders convicted of first-degree robbery. But even if Smith were correct, there is abundant "good reason" in his case.

First, Smith conceded the existence of two aggravating factors under AS 12.55.155(c): (c)(19) and (c)(21). In *Randall v. State*, 44 P.3d 984, 985 (Alaska App.2002), we held that the existence of statutory aggravators constitutes the "good reason" or "good cause" required by *Farmer*. Thus, even under the rule Smith proposes, the presence of these aggravators would authorize Judge Cutler to impose a sentence that exceeded Smith's suggested 10–year ceiling.

Second, as we noted above, the "good reason" required by *Farmer* does not require proof of any particular aggravator under AS 12.55.155(c). Rather, "good reason" can consist of other factors. Here, Smith's crimes involved many different victims, and they comprised discrete criminal episodes spread out over a period of months. These factors constitute "good reason" under *Farmer*.

Finally, Smith argues that, "given the case law, [his] youth, and [his prior] lack of adult criminal history", his composite sentence should not have exceeded 10 years to serve, or perhaps 15 years with some of it suspended.

We acknowledge that Smith is a youthful first felony offender, and we further acknowledge that, normally, one would not expect a youthful first felony offender to receive a composite sentence of 20 years to serve for crimes that did not involve the infliction of serious injury or sexual assault. But Smith is not a typical youthful first felony offender.

First, Smith was sentenced for a total of ten felonies and two misdemeanors stemming from six discrete criminal episodes.

Second, as explained above, Smith has been under state supervision for a great deal of his life since he was twelve—beginning with juvenile probation, followed by juvenile institutionalization, then jail (awaiting trial in his first five cases), followed by a brief interlude of freedom when he absconded while on bail release, and then a return to jail. Despite the efforts of probation officers and the juvenile court, Smith's history when not in custody has been one of repeated burglary and trespass, theft, and criminal mischief. Moreover, his conduct while in custody has included two flights from custody: an escape committed as a juvenile, and his act of absconding while on bail release in October 2005.

Repeated judicial interventions have not reformed Smith or even deterred him. In fact, as Judge Cutler noted at the March 2006 sentencing hearing, Smith's conduct "has gone from bad to very, very much worse". In his repeated burglaries, Smith has shown a continued interest in stealing firearms; and in case number 3PA–04–2791 Cr, his conduct escalated from theft to armed robbery.

Equally telling is Smith's manipulation of the system after being jailed for his first five criminal cases. Taking advantage of "compassionate leave"—*i.e.*, his temporary release on bail to attend his father's funeral—Smith absconded and quickly resumed his wonted criminal activities: burglary and theft of firearms. The fact that Smith committed these

new felonies while on bail release from his earlier felony charges is an aggravating factor under AS 12.55.155(c)(12). And this final criminal escapade is what prompted Judge Cutler to declare Smith "incorrigible".

In *Shagloak v. State,* 582 P.2d 1034, 1039–1040 (Alaska 1978), the Alaska Supreme Court upheld a sentence of 15 years to serve for a defendant convicted of a single residential burglary. Shagloak entered an apartment in the early morning hours, when the residents were asleep. However, he apparently was not armed, and he stayed for only a few minutes, grabbing a ring, some currency, and the wife's purse. *Id.* at 1038.

In upholding this sentence, the supreme court noted that Shagloak had compiled a lengthy criminal record over the preceding seven years: six burglaries, one escape, one larceny, and one act of defrauding an innkeeper (*i.e.,* absconding without paying). *Id.* at 1039. The supreme court declared:

> [This] record clearly demonstrates Shagloak's propensity for criminal activity. He has not been discouraged by more lenient sentences.... [Shagloak's present] crime was a serious offense committed by a dangerous, compulsive offender, thus warranting deviation from [normal sentencing guidelines]. In this case, the fifteen[-]year sentence was not excessive.

*Shagloak,* 582 P.2d at 1039.

Likewise, in *Griffin v. State,* 9 P.3d 301 (Alaska App.2000), this Court upheld a com-posite sentence of close to 23 years' imprisonment for a defendant with a long history of burglaries and thefts who was sentenced for a number of class B and class C felonies arising from two separate criminal episodes that occurred approximately three weeks apart.

In the present case, Smith was sentenced for armed robbery in addition to a series of burglaries and thefts. Despite being a teenager at the time of these crimes, Smith already had a lengthy history of convictions and unavailing attempts to supervise and rehabilitate him. Judge Cutler concluded that Smith was a dangerous and impulsive offender who could not be reformed or deterred, at least until he reached middle age. The record supports these conclusions.

The question before us is whether Smith's composite sentence of 20 years to serve is clearly mistaken.[36] On this record, we conclude that this composite sentence is not clearly mistaken. We therefore AFFIRM the sentencing decision of the superior court.

---

**36.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to uphold a sentencing decision unless the sentence is clearly mistaken).